Argued and submitted December 22, 1986, reversed and remanded with instructions
February 11, reconsideration denied April 10, petition for review denied
April 28, 1987 (303 Or 332)

# ALBERTSON'S INC.,
*Appellant,*

*v.*

# GREAT SOUTHWEST
# FIRE INSURANCE COMPANY,
*Respondent.*

## (8409-05360; CA A38749)

732 P2d 916

Nickolas J. Dibert, Portland, argued the cause for appellant. With him on the briefs were I. Franklin Hunsaker and Bullivant, Houser, Bailey, Hanna, Pendergrass, Hoffman, O'Connell & Goyak, Portland.

Jeffrey L. Dye, Portland, argued the cause for respondent. With him on the brief was Hagen & Dye, P.C., Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff brought this action against defendant insurer to recover indemnity for the judgment and the defense costs in a tort action which defendant refused to defend on plaintiff's behalf. The trial court granted defendant's motion for summary judgment and denied plaintiff's cross-motion. Plaintiff appeals from the resulting judgment, and we reverse.

Plaintiff engaged Risk Protection Corporation (Risk) to provide security services for its stores. Defendant provided insurance coverage to Risk, and plaintiff was named as an additional insured under the comprehensive general liability section of the policy. Defendant's coverage of plaintiff applies "with respect to liability arising out of operations performed for [plaintiff] by or on behalf of [Risk]." The covered events are bodily injury or property damage "caused by an occurrence." "Occurrence" is defined as "an accident * * * which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

In April, 1983, while performing security services for plaintiff, Risk employes stopped and detained Talfart Watts, a customer of plaintiff, when he left its store. Watts brought an action against plaintiff and Risk, stating claims for false imprisonment, assault and battery and intimidation because of race. Watts obtained a judgment against plaintiff and Risk. Defendant's refusal to defend plaintiff in the Watts litigation gave rise to this action.

■ Plaintiff assigns error to the granting of defendant's motion for summary judgment and to the denial of its own. Defendant argues that Watts' complaint alleged only intentional torts and that the personal injuries which he alleged do not include bodily injury. Defendant maintains that its coverage of plaintiff does not extend to intentional torts or to personal injuries other than bodily injury. Its argument that the Watts complaint alleged no bodily injury is manifestly incorrect. Watts alleged in his assault and battery claim that he "was *injured* and suffered nervous shock, *physical* and mental *pain and suffering*." (Emphasis supplied.) That allegation was ample to excite defendant's awareness that the type of injury claimed could "be reasonably interpreted" as coming "within the coverage of the policy." *Nielsen v. St. Paul Companies,* 283 Or 277, 281, 583 P2d 545 (1978), and cases there cited.

■ The more difficult question is whether defendant's coverage of plaintiff included the intentional torts alleged by Watts. Plaintiff argues that, whether or not the conduct Watts ascribed to the Risk employes was intentional *on the part of those employes,* it was not expected or intended *by plaintiff,* and the events alleged by Watts were therefore covered "accidents" from plaintiff's standpoint. Plaintiff relies principally on *Farris v. U.S. Fidelity & Guaranty,* 273 Or 628, 542 P2d 1031 (1975), where the court said:

> "We hold that the policy covers Farris and Kellum for intentional torts committed by their servants but not at the direction of Farris and Kellum. This holding is consistent with the public policy stated in *Isenhart v. General Casualty Co.,* 233 Or 49, 53, 377 P2d 26 (1962):
>
> > " '* * * However, punishment rather than deterrence is the real basis upon which coverage should be excluded. A person should suffer the financial consequences flowing from his intentional conduct and should not be reimbursed for his loss, even though he bargains for it in the form of a contract of insurance. A similar idea is expressed in the cases which exclude coverage on the ground that "a person should not profit from his own wrong." '
>
> "The vicarious liability of a master for the torts of his servants is not based upon any concept that the master has committed a morally wrongful act. Respondeat superior is applied as a policy of risk allocation and the master benefits from the servants' work. The master rather than the innocent injured plaintiff is better able to absorb and distribute the risk. Prosser, Torts (4th ed), p 459. There is no reason to punish the master by depriving him of his insurance coverage." 273 Or at 636-37.

*See also A-1 Sandblasting v. Baiden,* 293 Or 17, 26, n 6, 643 P2d 1260 (1982).[1]

Defendant responds that *Farris* and the other Oregon cases on which plaintiff relies deal with the question of

---

[1] Plaintiff also argues that, even as to the Risk employes, the allegations of Watts' complaint could have supported a judgment for him which did not require a finding that the employes acted with an intent to cause injury. *See Nielsen v. St. Paul Companies, supra; Ferguson v. Birmingham Fire Ins.,* 254 Or 496, 460 P2d 342 (1969). Because we agree with plaintiff's first argument, we do not address this alternative one.

whether it violates public policy for a master to be insured for intentional torts of his servants which the master does not intend, direct or condone. Defendant argues that the question here is whether the insurance contract covers plaintiff for the Risk employes' intentional torts, not whether the contract would offend public policy if it did afford such coverage. Defendant is correct in pointing out that the questions are different and in identifying which of the questions is before us here. The problem with defendant's argument is that, given the language of its policy, the analysis which resolves the first question is very similar to the analysis which resolves the second.

As we have noted, defendant insures plaintiff under the circumstances here for "accidents" which result in bodily injury which is "neither expected nor intended *from the standpoint of the insured.*" (Emphasis supplied.) Under the emphasized language, *plaintiff's* expectation and intent rather than that of the Risk employes are the relevant criteria, in much the same way that, under *Farris,* the master's intent rather than the servant's is determinative of whether public policy allows the former to be insured for the latter's intentionally injurious conduct.

The Oregon courts have stressed that, when an insurance policy does not define "accident," the term is to be applied in accordance with its "common understanding * * * by the ordinary members of the purchasing public," *Botts v. Hartford Acc. & Indem. Co.,* 284 Or 95, 101, 585 P2d 657 (1978), and that an event comes within that understanding "if it is unforeseen, unexpected, unintended or the like." *Safeco Ins. v. House,* 80 Or App 89, 96, 721 P2d 862, *rev den* 302 Or 86 (1986), and cases there cited. The tortious conduct alleged in Watts' complaint could reasonably have been understood to meet that definition of "accident" from plaintiff's standpoint.

■ Defendant argues, as an alternative to its principal contention:

> "Claims of false arrest arising out of Risk's activities can hardly be considered 'accidents' neither expected nor intended from Plaintiff's point of view. Plaintiff obviously made purchase of liability insurance for Plaintiff a condition of Risk's contract precisely because Plaintiff expected such claims to arise out of Risk's performance."

If, by that, defendant means that there is a question of fact as to what plaintiff expected or intended or that it was conclusively established in the summary judgment documentation that plaintiff did expect or intend the torts or the injuries alleged by Watts, defendant points to nothing in the record to substantiate its assertion. More saliently, the assertion is not relevant. The issue is not whether plaintiff did *in fact* expect or intend the events, but whether Watts' complaint disclosed any basis upon which Watts could obtain a judgment against plaintiff to which defendant's coverage could apply. If so, the duty to defend existed. *See Nielsen v. St. Paul Companies, supra,* 283 Or at 280-81, and authorities there cited. The allegations of Watts' complaint were sufficient to reveal to defendant that plaintiff could be held vicariously liable for actions by the Risk employes which plaintiff did not expect or intend. It follows that defendant was required to defend and is required to indemnity plaintiff for the judgment Watts obtained on the basis of those allegations. The trial court erred by allowing defendant's motion and by disallowing plaintiff's.

Reversed and remanded with instructions to enter judgment for plaintiff.