Argued and submitted April 7, affirmed as modified September 6, 1989

SMITH,
*Respondent,*

*v.*

WILLIAMS,
*Appellant.*

(8610-05955; CA A49349)

779 P2d 1057

Lee Aronson, Portland, argued the cause for appellant. With him on the briefs were William F. Schulte, Jr., and Schulte, Anderson, DeFrancq, Downes & Carter, Portland.

Mark McCulloch, Portland, argued the cause for respondent. With him on the brief was Powers, McCulloch & Bennett, Portland.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

GRABER, P. J.

## GRABER, P. J.

Defendant appeals from a judgment in favor of plaintiff, his ex-wife, in this action for an accounting.[1] We review *de novo*.[2]

Plaintiff and defendant were divorced in 1970. Under the terms of the divorce judgment, they became tenants in common with respect to their interests in Salem Development Corporation, Inc., T.A. Livesley & Company, and land known as the "Duck Lake property." That judgment required defendant to pay all expenses associated with the properties until they were sold. Defendant was entitled to reimbursement out of the proceeds of sale for one-half of those expenses paid after October 25, 1968, and the parties were to share the remainder of the proceeds equally. Apparently by agreement of the parties, defendant managed their interests in the properties.

The Duck Lake property was sold by contract in 1980. Payments on the contract were made to defendant alone from 1980 to 1985.

We quote the trial court's description of the history of T.A. Livesley & Company:

"T.A. Livesley & Company was liquidated in 1984. Its assets were distributed to its shareholders who continued the business as a partnership, Capitol Tower. All of the partnership assets were sold in 1986 in two separate transactions. What is referred to as the Tahiti Restaurant was sold on contract on which there continues to be an unpaid balance. The Capitol Tower office building was sold for cash."

In this action, plaintiff sought an accounting as to the Duck Lake property, T.A. Livesley & Company, and Salem Development Corporation, Inc., and asked that the Salem Development stock be partitioned. The trial court entered a judgment of $34,767.94 for plaintiff and ordered the stock

---

[1] Judgment also was entered against Salem Development Corporation, which did not appeal.

[2] When the evidence depends on witnesses' credibility, we give weight to the trial court's findings. *See Gentry v. Lane,* 245 Or 122, 134, 420 P2d 637 (1966); *Jewell and Jewell,* 51 Or App 129, 624 P2d 1092, *rev den* 290 Or 853 (1981). In this equity case, however, plaintiff incorrectly argues that, as the prevailing party below, she is "entitled to have all disputed facts decided in her favor" and that we "cannot set aside general findings by [the] trial court * * * if they are supported by any substantial evidence or reasonable inferences."

partitioned.[3] Defendant appeals and raises five assignments of error.

He first assigns error to the trial court's award of "$1,107.80 on account of Duck Lake." Plaintiff's exhibit 2 showed that defendant still owed her that amount with respect to Duck Lake. In his opening statement, defendant's attorney admitted that plaintiff's exhibit 2 correctly showed what defendant owed. During trial, however, the attorney learned that exhibit 2 did not reflect defendant's expense payments. Thereafter, he argued that exhibit 2 was correct only as to the gross amount but that it did not, as allowed by the divorce judgment, credit defendant's expenses. Defendant argues that crediting those expenses creates a $1,054.88 net credit in his favor. The issue, then, is how much, if anything, defendant paid to maintain the Duck Lake property.

We find that defendant paid $4,325.37. In 1980, shortly after selling Duck Lake, he wrote a letter to plaintiff summarizing expenses (primarily property taxes) in that amount. His testimony at trial confirmed the essence of that letter. Further, in a 1977 letter, defendant told plaintiff that he was paying "about $300.00 a year in taxes" on Duck Lake. Except for the attorney's admission, there is no evidence to the contrary.

The trial court held that the opening statement was a "judicial admission," which defendant could not contradict. However, that admission was only evidence, *see Stone v. Stone,* 268 Or 446, 450, 521 P2d 534 (1974), and we find the contrary evidence more persuasive. The trial court also found that defendant's testimony was not credible, because he had acted inconsistently in making payments to plaintiff on account of Duck Lake and because he offered no underlying documents in support of the 1980 letter. However, defendant's 1977 and 1980 letters were consistent with his testimony. It is inherently credible that a property owner paid some property taxes. We also note the complexity of the finances surrounding the Duck Lake property, which may explain defendant's

---

[3] The judgment also ordered that future payments from the Tahiti Restaurant (part of the proceeds from the sale of the assets of the Capitol Tower partnership) be divided equally and that plaintiff be assigned one-half of defendant's future rights in the contract. That part of the judgment is not challenged on appeal. Neither is the award of costs to plaintiff.

overpayment.[4] We award defendant a net credit of $1,054.88 on account of Duck Lake.

Defendant next assigns error to the trial court's refusal to allow him credit for $8,400 in capital contributions that he made to T.A. Livesley & Company between 1968 and 1977.[5] He offered as evidence of those contributions a typed statement prepared by a secretary for one of the company's shareholders, listing what each of the shareholders had contributed in various years. Defendant and Lewelling, another shareholder, testified that the list accurately reflected the shareholders' contributions. The secretary testified that she prepared the list in 1979 from monthly ledgers in which she had recorded capital contributions and that the ledgers were lost in an office move in 1987.

The trial court found the evidence of capital contributions not credible, because better evidence (such as tax records) could have been produced. However, even if the trial court distrusted defendant and the typed list, there is no basis in the record or in the trial court's findings to disbelieve the two non-party witnesses who testified to the accuracy of the claimed amount of contributions. The trial court also reasoned that "[i]t is even possible that some of the contributions were repaid" through "benefits" derived by defendant from the corporation. Nothing in the record supports a finding that defendant's contributions were repaid in any form.

Defendant is entitled, then, to credit for capital contributions to the company. With respect to 1968, however, there is no evidence that the $1,000 contribution for that year was made after October 25, 1968, the date provided in the

---

[4] As an illustration, we quote a part of the evidence regarding the Duck Lake property:

"The Duck Lake property consisted of two parcels, A and B. The A parcel was 35.2113% of the total property and was 37.5% owned by [defendant]. The B parcel was 64.7887% of the total property and was 33.3% owned by [defendant]. The entire property (parcels A and B) was sold for $39,000 in 1980. The down payment was $15,000 and the remaining $24,000 was split into two notes. The first note (for parcel A) was for $8,450.71 and was payable in semiannual installments of $528.17 including interest at 10% starting 3-20-80. A final balloon payment was due 9-20-85. The second note (for parcel B) was for $15,549.29 and was payable in semiannual installments of $971.83 including interest at 10% starting 3-20-80."

[5] Both parties treat the capital contributions as "expenses" within the meaning of the divorce judgment.

divorce judgment. We therefore credit defendant with $3,700 (half of $7,400) on account of capital contributions to T.A. Livesley & Company, against the proceeds of sale of Capitol Tower.

■        In his third assignment, defendant argues that the trial court erred in crediting plaintiff with "one-half of the income taxes saved by [defendant] in those years in which he deducted the full amount of the parties' losses on his individual tax returns." T.A. Livesley & Company and its successor, the Capitol Tower partnership, generated significant losses. Without informing plaintiff of them, defendant claimed 100 percent of his *and* plaintiff's losses on *his* income tax returns. Plaintiff received none of the tax benefits. She sought, and the trial court awarded her, one-half of *defendant's* tax savings.

Plaintiff is not entitled to one-half of defendant's tax benefits, but to the tax benefits that *she* would have gained, had she known of and claimed the losses herself. There is no evidence of what tax savings, if any, plaintiff would have obtained had she claimed the losses. Therefore, she is not entitled to anything on account of tax benefits.

Fourth, defendant contends that plaintiff cannot recover prejudgment interest. "Prejudgment interest is proper when the exact amount owing is ascertained or easily ascertainable by simple computation or by reference to generally recognized standards and where the time from which interest must run can be ascertained." *Gerber v. O'Donnell,* 81 Or App 262, 265-66, 724 P2d 916 (1986). (Citations omitted). The character of the damages, not the claim, is the determinative factor in awarding prejudgment interest; the action need not be on a contract. *Bollam v. Fireman's Fund Ins. Co.,* 76 Or App 267, 276, 709 P2d 1095 (1985), *rev'd on other grounds* 302 Or 343, 730 P2d 542 (1986).

In the light of our findings concerning the Duck Lake property and the tax savings, the parties' dispute about prejudgment interest pertains only to amounts that defendant received from T.A. Livesley & Company and from the sale of the assets of the Capitol Tower partnership (the Capitol Tower building and the Tahiti Restaurant). Defendant received $20,000 in income from T.A. Livesley & Company in

1976.[6] He received $72,908 in 1986 from the sale of the Capitol Tower, plus contract payments from the sale of the Tahiti Restaurant of $3,412 in 1986 and $892 in 1987.[7]

■     On appeal, defendant does not contest plaintiff's entitlement to half of each of those amounts, nor does he assert that the time from which interest would run cannot be ascertained.[8] Rather, he argues that the calculation of what he owes is so complex that the amounts owing are not easily ascertainable. We disagree. With respect to the $20,000 in income from T.A. Livesley & Company, there is no calculation to be made. As to the money from the sale of the Capitol Tower and the Tahiti Restaurant, the divorce judgment sets out the formula, and the calculation under it is straightforward. The "complexity" arises only from defendant's failure to keep more complete records of his expense payments. As it was, there were questions of fact that had to be resolved before the amounts owing could be ascertained, but that does not bar a determination that defendant owed sums certain at dates certain. *Isler v. Shuck*, 38 Or App 233, 239, 589 P2d 1180 (1979). Plaintiff is entitled to prejudgment interest.

Our holdings result in this accounting:

AMOUNT OWING TO PLAINTIFF

| YEAR | (PROPERTY SOURCE) | | INTEREST[9] | TOTAL |
|------|--------|-------------------|----------|---------|
| 1976 | $10,000 | (T.A. Livesley) | 9,415 | $19,415 |
| 1986 | 1,706 | (Tahiti Restaurant) | 224 | 1,930 |

[6] The income was from a refinancing of the company's major asset, the Capitol Tower office building.

[7] The record reveals only the year, but not the date, when defendant received each of those payments. Accordingly, we award plaintiff interest from January 1 of the year following each payment.

[8] As cotenant of the parties' interest, plaintiff was entitled to her share of the money that defendant received from T.A. Livesley & Company when he received it. *See* 86 CJS 416, "Tenancy in Common," § 48; 20 Am Jur 2d 141, "Cotenancy and Joint Ownership," § 51. With regard to the sale of assets, the divorce judgment provided that defendant owed plaintiff a portion of the proceeds upon the sale of the parties' interest in their properties.

[9] As the parties agreed, we award interest at 6% from June 15, 1976, to December 31, 1979, and at 9% from January 1, 1980, to June 15, 1988. As did the trial court, we calculate simple interest; plaintiff does not contend that compound interest would be proper.

| | 32,754[10] (Capitol Tower) | 4,307 | 37,061 |
|---|---|---|---|
| 1987 | 446 (Tahiti Restaurant) | 19 | 465 |

| | |
|---|---|
| TOTAL AMOUNTS OWING TO PLAINTIFF | $58,871 |
| Credits uncontested on appeal | $45,946 |
| Credit for Duck Lake payments | 1,054[11] |
| TOTAL CREDITS | $47,000 |
| NET JUDGMENT DUE PLAINTIFF: | $11,871[12] |

Finally, defendant claims that the trial court erred in partitioning the Salem Development, Inc., stock. It ordered that the corporation reissue the six shares of stock that are owned by the parties as tenants in common, three shares to plaintiff and three to defendant. The partition was not error and, in the light of the parties' acrimonious relationship, was a sensible choice. *See Killam v. Killam,* 251 Or 59, 444 P2d 479 (1968); *Abraham v. Goff,* 85 Or App 595, 598, 737 P2d 971 (1987).

Paragraph 1 of judgment modified to award plaintiff $11,871; affirmed as modified.

---

[10] The amount owing on Capitol Tower is $36,454, minus $3,700 for the 1969-1977 capital contributions.

[11] The Duck Lake credit is calculated as follows:

| | |
|---|---|
| Amount of proceeds paid by defendant to plaintiff: | $1,108 |
| One half of defendant's expenses of $4,325.37 | − 2,162 |
| NET CREDIT | −$1,054 |

[12] The trial court awarded plaintiff a judgment of $34,767.94. That amount is reduced to $11,871 when we change the $1,107.80 credit for Duck Lake to a $1,054 debit, eliminate the "Capitol Tower Tax Shelter" savings of $11,599, allow defendant to deduct $3,700 in capital contributions, use round numbers, and recalculate interest as appropriate.