Argued and submitted March 17; taken In Banc September 4, reversed and remanded for further proceedings November 26, respondent's petition for reconsideration filed December 11, 1997, allowed by opinion February 25, 1998
See 152 Or App 738, _____ P2d _____ (1998)

## KLAMATH PACIFIC CORPORATION,
an Oregon corporation, and Robert Stewart,
*Respondents,*

*v.*

## RELIANCE INSURANCE COMPANY,
*Appellant,*

*and*

## INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,
a Pennsylvania corporation,
*Defendant.*

(9302944CV; CA A91172)

950 P2d 909

406

William G. Earle argued the cause for appellant. On the briefs were William L. Hallmark and Hallmark, Keating & Abbott, P.C.

Gregory B. Snook argued the cause for respondents. With him on the brief was Kilmer, Voorhees & Laurick, P.C.

LANDAU, J.

Riggs, J., concurring in part; dissenting in part.

.

**LANDAU, J.**

At issue in this case is whether defendant Reliance Insurance Company (Reliance) had a duty to defend plaintiffs Robert Stewart and Klamath Pacific Corporation (Klamath Pacific) in lawsuits brought by former employees of Klamath Pacific. The trial court held that Reliance did owe plaintiffs such a duty to defend in the underlying actions. Reliance appeals.

In February 1990, two former employees of Klamath Pacific, Ballinger and Sutfin, filed actions in federal district court against Klamath Pacific, against Stewart, as principal shareholder and president of Klamath Pacific, and against two supervisors employed by Klamath Pacific, Pearce and Mahoney. Although Ballinger and Sutfin alleged various federal claims in those actions, the claims now at issue are their pendent state claims of intentional infliction of emotional distress. Those claims (presented the same in both Ballinger's and Sutfin's pleadings), included the following allegations:

"2.

"At all relevant times hereto, Defendant Klamath Pacific Corporation ('Klamath Pacific') was an Oregon Corporation doing business in the state of Oregon.

"* * * * *

"4.

"On or about August 1988, Plaintiff was hired by Klamath Pacific as a traffic control person. Defendant Kevin Mahoney ('Mahoney') and Defendant Michael Pearce ('Pearce') were employees of Klamath Pacific and were Plaintiff's supervisors.

"5.

"Beginning from the time of Plaintiff's initial employment with Klamath Pacific, and continuing throughout her employment, Plaintiff was subjected to unwelcome sexual harassment by Mahoney, Pearce and Klamath Pacific. The sexual harassment was undesirable and offensive to Plaintiff and was based upon Plaintiff's sex. Such harassment affected the term, condition or privilege of Plaintiff's

employment, and created a hostile and abusive working environment.

## "6.

"Defendant Robert Stewart ('Stewart'), principal shareholder and President of Klamath Pacific knew or should have known of the harassment, and failed to take prompt remedial action.

"* * * * *

## "15.

"While employed at Klamath Pacific, Plaintiff was subjected to conduct intending to inflect [sic] severe mental or emotional distress. The intentional conduct included in part, but is not limited to, the following:

"a.   Pearce and Mahoney intentionally grabbed or rubbed Plaintiff's breasts and buttocks.

"b.   Mahoney grabbed his crotch and made gestures to Plaintiff to indicate the size of his penis.

"c.   Mahoney gestured to Plaintiff with his hand on his throat and then spit, simulating masturbation and ejaculation.

"d.   Pearce and Mahoney made sexually explicit comments and gestures to and about Plaintiff.

## "16.

"The acts of Defendants caused Plaintiff severe mental or emotional distress including shame, humiliation, embarrassment and severe emotional distress, as well as physical illness.

## "17.

"The comments and conduct of the Defendants amounted to an extraordinary transgression of the bounds of socially tolerable conduct.

## "18.

"As a result of the above conduct by Defendants, Plaintiff is entitled to general damages, compensatory damages and punitive damages."

Ballinger's and Sutfin's claims for intentional infliction of emotional distress eventually were dismissed by the federal district court, and both filed similar claims in state court, making the following allegations:

"1.

"At all relevant times hereto, Defendant Klamath Pacific Corporation ('Klamath Pacific') was an Oregon Corporation doing business in the state of Oregon.

"2.

"In August 1988, Plaintiff was hired by Klamath Pacific as a traffic control person.

"* * * * *

"19.

"At all relevant times hereto, Klamath Pacific was Plaintiff's employer, Pearce was Plaintiff's acting supervisor, and Mahoney acted as Plaintiff's supervisor in the absence of Pearce. While on the job at Klamath Pacific, Pearce and Mahoney abused their positions as supervisors over Plaintiff in one or more of the following instances of their intentional conduct (conduct is not limited to these specific acts):

"(a)  On at least one occasion, Pearce and Mahoney intentionally rubbed their arms against Plaintiff's breasts.

"(b)  Mahoney grabbed his crotch and made gestures to Plaintiff to indicate the size of his penis.

"(c)  Mahoney gestured to Plaintiff with his hand on his throat and then spit, simulating masturbation and ejaculation.

"(d)  On numerous occasions, Pearce and Mahoney grabbed, or attempted to grab, Plaintiff's breasts and buttocks.

"(e)  On numerous occasions, Pearce and Mahoney made sexually explicit comments and gestures to and about Plaintiff.

"20.

"Defendants knew that the above acts would cause Plaintiff severe mental or emotional distress, and Defendants Pearce and Mahoney committed the above acts with the intent to cause Plaintiff severe mental or emotional distress.

"21.

"The comments and conduct by Defendants were outrageous in the extreme and were an extraordinary transgression of the bounds of socially tolerable conduct, and caused Plaintiff shame, humiliation, embarrassment and severe physical and emotional distress.

"22.

"As a result of the above acts and conduct by Defendants Pearce and Mahoney, Plaintiff is entitled to general damages, compensatory damages [and] punitive damages against Pearce and Mahoney directly, and against Stewart and Klamath Pacific vicariously under the doctrine of Respondeat Superior."

In their state court actions, Ballinger and Sutfin also added a new state law claim for battery. The state claims again alleged that Klamath Pacific was an Oregon Corporation and that Ballinger and Sutfin were hired as traffic controllers in August 1988. Those claims further alleged:

"28.

"During Plaintiff's period of employment with Klamath Pacific from August 1988 through August 1989, Defendants Pearce and Mahoney voluntarily and intentionally committed the following (not exclusive list) acts:

"(a)  On at least one occasion, both Pearce and Mahoney intentionally rubbed their arms against Plaintiff's breasts.

"(b)  On several occasions, both Pearce and Mahoney grabbed and pinched Plaintiff's breasts and buttocks.

"(c)  On at least one occasion, Mahoney grabbed Plaintiff and pulled her up against him.

"29.

"Such contact with Plaintiff was offensive, unpermitted, and insulting to Plaintiff, causing her embarrassment, shame, and emotional harm.

"30.

"As a result of Defendants Pearce and Mahoney's acts and omissions as alleged above, Plaintiff is entitled to recover damages for lost wages, general damages, compensatory damages, and punitive damages against Pearce and Mahoney directly, and against Stewart and Klamath Pacific vicariously under the doctrine of Respondeat Superior."

At all relevant times, Klamath Pacific and Stewart were covered by a general liability insurance policy issued by Reliance. The policy contained the following exclusions:

"Insurance under Coverage A. **Bodily Injury** and **Property Damage** Liability does not apply to:

"a.   Intentional acts:

"**bodily injury** or **property damage** expected or intended from the standpoint of the **insured**. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

"* * * * *

"e.   Employers liability:

"(1)   **bodily injury** to an employee of the **insured** arising out of and in the course of employment by the **insured**[.]"

(Boldface in original.) The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including care, loss of services or death resulting from any of these at any time." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Emphasis omitted.)

Klamath Pacific and Stewart tendered the defense of Ballinger's and Sutfin's actions against them to Reliance.

Reliance refused to defend Klamath Pacific and Stewart in these actions.[1] Reliance asserted that the claims did not contain allegations of "bodily injury" covered by their policy or that coverage was excluded either under the "intentional acts" exclusion or under the employers liability exclusion contained in the policy. Klamath Pacific and Stewart hired counsel to represent them in the actions by Ballinger and Sutfin.

Klamath Pacific and Stewart also instituted this action for declaratory judgment against Reliance, claiming that Reliance had a duty to defend Stewart in the underlying federal suits and to defend both Klamath Pacific and Stewart in the underlying state suits and seeking reimbursement for the costs of defending the Ballinger and Sutfin claims. The parties stipulated to the relevant facts, as set forth above, and filed cross-motions for summary judgment. The trial court concluded that Reliance had a duty to defend the underlying claims. By stipulation of the parties, the determination of damages was referred to a referee. The trial court entered judgment in favor of Klamath Pacific and Stewart, affirming the findings of the referee, and awarded plaintiffs prejudgment interest, as well. Reliance appeals that judgment.

The issues on appeal are whether Reliance had a duty to defend Stewart and Klamath Pacific in the state court actions, whether Reliance had a duty to defend Stewart in the federal actions and, if so, whether that duty ended when Stewart successfully moved to dismiss the claim for intentional infliction of emotional distress. Also at issue is whether the trial court correctly awarded plaintiffs prejudgment interest.

---

[1] The outcome of Ballinger's and Sutfin's claims is discussed in *Ballinger v. Klamath Pacific Corp.*, 135 Or App 438, 898 P2d 232, *rev den* 322 Or 360 (1995). Sutfin prevailed on both the intentional infliction of emotional distress claim and the battery claim; Ballinger prevailed on the battery claim. *Id.* at 445-46. However, for the reasons discussed in the text below, the outcome of the present case depends solely on the allegations in Ballinger's and Sutfin's complaints and on the provisions of Reliance's insurance policy; it does not depend on the ultimate merits of Ballinger's and Sutfin's claims. Thus, the facts discussed in this court's decision in *Ballinger* are not relevant to the present case.

■■ The duty of an insurer to defend is not coextensive with the duty to indemnify. An insurer's duty to defend a lawsuit is determined by looking only to the facts alleged in the underlying complaint and to the text of the insurance policy. *Ledford v. Gutoski*, 319 Or 397, 400, 877 P2d 80 (1994). If the claim stated in the underlying complaint, without amendment, could impose liability for conduct covered by the insurance policy, the insurer has a duty to defend that claim. *Id.* This duty to defend arises "if the complaint provides *any basis* for which the insurer provides coverage." *Id.* (emphasis in original). Thus, if a complaint alleges some conduct that would be covered, and some that would not, the insurer has a duty to defend. Moreover, any "ambiguit[ies] in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured." *Id.* If the allegations are ambiguous or unclear, but may be interpreted reasonably to include an incident within the coverage of the policy, there also is a duty to defend. *Cooper v. Commonwealth Land Title Ins. Co.*, 73 Or App 539, 542, 699 P2d 1128, *rev den* 299 Or 583 (1985). If some of the allegations pertain to conduct that could be covered by the insurance policy, and some that could not, the insurer must defend the entire action. *Timberline Equip. v. St. Paul Fire and Mar. Ins.*, 281 Or 639, 645, 576 P2d 1244 (1978). The question, then, is whether the facts alleged in the underlying complaints can be interpreted reasonably as including any conduct within the coverage of the insurance policy.

■■ We turn first to whether Ballinger's and Sutfin's state court complaints alleging intentional infliction of emotional distress stated claims that, without amendment, could impose liability for conduct covered by the Reliance policy insuring Klamath Pacific and Stewart. Reliance argues that the trial court erred, for several reasons, in determining that it had a duty to defend those claims against Klamath Pacific. First, Reliance asserts that the claims for intentional infliction of emotional distress were not covered, because the complaints did not allege "bodily injury," as that term is defined in the Reliance policy. The Reliance policy defines "bodily injury," in pertinent part, as "bodily injury, sickness or disease." The complaints alleged that defendants' acts caused

"severe physical \* \* \* distress." An allegation of severe physical distress may be interpreted reasonably as an allegation of "bodily injury, sickness or disease." Reliance argues that, notwithstanding our prior decision to the contrary in *McLeod v. Tecorp International, Ltd.*, 117 Or App 499, 501-02, 844 P2d 925 (1992), *mod on recon* 119 Or App 442, *rev'd on other grounds* 318 Or 208, 865 P2d 1283 (1993), a claim concerning emotional distress does not concern "bodily injury" unless the emotional distress resulted from a physical trauma to the body that was the basis of the cause of action. Even if Reliance were correct in that statement of the law, the complaints at issue here may be read reasonably to encompass such a claim. One of the allegations was that Pearce and Mahoney grabbed Ballinger's and Sutfin's breasts and buttocks: It may reasonably be inferred from those pleadings that such conduct could have caused physical trauma to the bodies of Ballinger and Sutfin. The state court complaints sufficiently allege that the plaintiffs suffered "bodily injury." *See also Albertson's Inc. v. Great Southwest Fire Ins. Co.*, 83 Or App 527, 529, 732 P2d 916, *rev den* 303 Or 332 (1987) (allegation of " 'physical and mental pain and suffering' " sufficiently alleged bodily injury to give rise to duty to defend, because it could be interpreted reasonably as coming within the coverage of the insurance policy).

Reliance next argues that it had no duty to defend the battery claims or the intentional infliction of emotional distress claims because the "employers liability" policy exclusion applies. That exclusion applies to claims of bodily injury to employees "arising out of and in the course of employment" by the insured. In *McLeod v. Tecorp International, Ltd.*, 318 Or 208, 217, 865 P2d 1283 (1993), the Supreme Court addressed the applicability of identical exclusion language to the following allegations:

" 'At all times material hereto, [Mouakad] was \* \* \* employed by [Tecorp] in a supervisory capacity over plaintiff.

" 'Plaintiff was hired by [Tecorp] on or about April 11, 1988. During plaintiff's employment with [Tecorp], defendant [Mouakad] subjected her to harassment, intimidation

and ridicule in that defendant [Mouakad] would make sexually inappropriate comments, sexual touchings, and sexual advances to the plaintiff. Such conduct was in violation of ORS 659.030.' "

The court held that:

"Those allegations demonstrate that the * * * claims asserted by plaintiff arose during her employment at Tecorp and while she was on the job at Tecorp. Plaintiff's complaint contains no allegations concerning events that occurred other than in connection with her employment at Tecorp, during her employment at Tecorp, and while she was at work at Tecorp. Nothing in the record suggests a contrary conclusion."

*Id.* Thus, on the basis of allegations that tortious conduct occurred "during * * * employment," and, in the absence of any allegation of a tortious off-the-job event, the court found that the plaintiff's claims arose out of and in the course of employment, triggering an employers liability policy exclusion.

In this case, the allegations are not materially different. In the plaintiffs' claims for battery, as in *McLeod*, the complaints alleged that the acts of bodily injury occurred during Ballinger's and Sutfin's employment. And, as in *McLeod*, there was no mention of tortious conduct occurring other than on the job. The complaints lacked an allegation of so much as a single event that occurred off the job. Moreover, Ballinger and Sutfin demanded damages not just against Pearce and Mahoney, but against their employer as well, on a theory of *respondeat superior*, which applies only if the tortious conduct occurred during the course of employment.

Other allegations in the complaints confirm the conclusion that the tortious conduct of Pearce and Mahoney occurred in the course of Ballinger's and Sutfin's employment. The complaints also alleged claims for violation of civil rights based on the same conduct and included the following allegations:

"From the time that Plaintiff began her employment, and *throughout her employment with Klamath Pacific, and as part of the terms and conditions of Plaintiff's employment* with Klamath Pacific, Plaintiff was subjected to continuous

unwelcome and offensive sexual jokes, comments, gestures, and other conduct and harassment by Plaintiff's supervisors [Pearce and Mahoney], *while on the job at Klamath Pacific.*"

(Emphasis supplied.) Clearly, Ballinger and Sutfin complained of tortious conduct that occurred solely on the job.

■ Klamath Pacific argues that the key to this case is the fact that Ballinger and Sutfin did not allege that the tortious acts occurred "during * * * employment," as was the case in *McLeod*; instead, the complaint alleged that the tortious acts occurred "during *the period* of employment." That means, Klamath Pacific argues, that the tortious acts did not necessarily occur while the parties were on the job, only that the tortious acts could have occurred on some *date* on which Ballinger and Sutfin were employed under the supervision of Pearce and Mahoney.

The answer to Klamath Pacific's argument is straightforward: If Klamath Pacific were correct, *McLeod* would have been decided differently. The allegation that tortious conduct occurred "during * * * employment" is, by itself, reasonably capable of being construed to mean "during *the period* of employment." That is what "during" means. Thus, even in *McLeod*, the allegations technically were capable of being read to mean that the plaintiff suffered bodily injury off the job. Yet the Supreme Court concluded otherwise. Looking at the allegations of the complaint, the court noted the allegation that tortious conduct occurred during employment and that there were no allegations to the contrary. The same analysis is required in this case, and the same conclusion follows.

The allegations relating to the claims for intentional infliction of emotional distress are not materially different from those relating to the claims for battery. If anything, they more clearly allege that the tortious conduct occurred on the job. Again, the only reasonable way to read those allegations is that the tortious conduct occurred on the job. The complaints expressly alleged that, at the relevant times, Pearce and Mahoney acted as supervisors and that, "[w]hile on the job," they engaged in the tortious conduct described in detail

and that, in so doing, they "abused their positions as supervisors." Moreover, as in the claims for battery, in the claims for intentional infliction of emotional distress, Ballinger and Sutfin demanded damages from Klamath Pacific for its vicarious liability, which can occur only if the tortious conduct occurred on the job. Accordingly, the employers liability exclusion applies to the intentional infliction of emotional distress claims, as well.

Reliance next argues that the trial court erred in holding that it had a duty to defend Stewart in Ballinger's and Sutfin's federal court claims for intentional infliction of emotional distress. Again, we rely solely on the face of the complaints—in this instance, the federal complaints—and the terms of the insurance policy to determine if Reliance had a duty to defend those claims.[2] The claim for intentional infliction of emotional distress in the federal complaints alleged that Ballinger and Sutfin were subjected to unwelcome sexual harassment that affected conditions of their employment and created a hostile working environment. Those allegations clearly pertain to conduct that occurred while Ballinger and Sutfin were on the job. Moreover, in the federal complaint, the actions by Pearce and Mahoney that were alleged to have caused severe emotional distress also were alleged to have occurred "[w]hile [Ballinger and Sutfin] were employed at Klamath Pacific." The federal court complaints clearly allege tortious conduct by Pearce and Mahoney that occurred while Ballinger and Sutfin were on the job at Klamath Pacific. However, plaintiffs have not claimed that Reliance had a duty to defend Klamath Pacific in the federal litigation; they have claimed only that Reliance had a duty to defend Stewart in those actions. The complaints do not allege that Stewart was Ballinger's and Sutfin's employer. The

---

[2] Federal courts require only notice pleading, unlike Oregon courts' fact pleading. Thus, the Ninth Circuit has held that to determine an insurer's duty to defend a claim in federal court, the insurer may go beyond the complaint, using methods such as interrogatories and discovery, to establish the factual basis for the claim. *Ross Island Sand & Gravel Co. v. General Ins. Co. of Amer.*, 472 F2d 750, 752 (9th Cir 1973). In the present case, Reliance does not argue that Ballinger's and Sutfin's federal complaints did not contain sufficient facts for it to make a determination on its duties to defend and does not argue that this court should apply a different standard to the federal complaint than it does to a state complaint. Thus, we need not address in this case whether we should use a different standard to evaluate an insurer's duty to defend a federal claim.

"employers liability" exclusion must be analyzed separately as to each insured. Although Klamath Pacific, as employer, fell within the "employer liability" exclusion, it does not necessarily follow that Reliance had no duty to defend Stewart, who was not identified as an employer, but as shareholder and president. *See Cimarron Ins. Co. v. Travelers Ins. Co.*, 224 Or 57, 60-62, 355 P2d 742 (1960) (employers liability exception may apply differently to different insureds under same policy).

■　　　Reliance alternatively argues that it had no duty to defend the federal court claims of intentional infliction of emotional distress because of the "intentional acts" exclusion in its policy. That exclusion applies if the injury at issue was "expected or intended from the standpoint of the insured." The complaints allege that Pearce and Mahoney acted with intent to cause Ballinger and Sutfin severe mental or emotional distress. Pearce and Mahoney, however, are not "the insured." The insureds are Stewart and Klamath Pacific. Thus, the intentional acts exclusion does not apply.

■　　　Reliance next argues that, even if it had a duty to defend Stewart in the federal lawsuits, that duty terminated when counsel for Stewart successfully moved to dismiss the claims for intentional infliction of emotional distress against Stewart. Reliance offers no law in support of that argument. As noted above, an insurer's duty to defend, if it exists, includes a duty to defend the entire action. *Timberline Equip.*, 281 Or at 645. An intermediate order from a trial court dismissing a claim is not a final resolution of that claim. Such an order does not relieve an insurer of its duty to defend.

■　　　Finally, Reliance argues that the trial court erred in allowing plaintiffs to recover prejudgment interest. Reliance asserts that, because the ultimate amount of damages was not ascertainable at the time it breached its duty to defend, plaintiffs may not recover prejudgment interest. We disagree. In *Smith v. Williams*, 98 Or App 258, 263, 779 P2d 1057 (1989), we stated:

"Prejudgment interest is proper when the exact amount owing is ascertained or easily ascertainable by simple computation or by reference to generally recognized standards

and where the time from which interest must run can be ascertained."

(Citations omitted.) Reliance asserts that, because the exact amount of damages it would cause on the date it breached its duty to defend could not be determined *on that date*, it is not responsible for prejudgment interest on any of the damages. In support of its position, Reliance cites *Wells v. Marleau*, 79 Or App 784, 720 P2d 409, *rev den* 302 Or 159 (1986). In *Wells*, the plaintiffs claimed prejudgment interest on their damages from the date of the breach of a contract. *Id.* at 786.

> "Plaintiffs failed to prove that the exact pecuniary amount of the loss that they suffered was either ascertained or ascertainable by simple computation *as of the date of the closing* [*i.e.,* the breach]."

*Id.* (emphasis supplied). Moreover, "[p]laintiffs did not assert that prejudgment interest could accrue beginning on the happening of any event *other than* the closing." *Id.* at 786-87 (emphasis supplied). Under those circumstances, this court held that the plaintiffs could not recover prejudgment interest running from the date of the breach of the contract, because the damages at issue were neither ascertained nor ascertainable as of that date.

In this case, plaintiffs have *not* claimed that they are entitled to prejudgment interest running from the date that Reliance breached its duty to defend. Rather, they sought prejudgment interest on the amounts it paid to its defense counsel for defending the various claims, as of the dates plaintiffs made those payments. Those damages are easily ascertainable by simple computation. No question exists as to when those payments were made, and thus no question exists as to whether plaintiffs suffered those specific damages on those specific dates. *See, e.g., Robertson v. Jessup*, 117 Or App 460, 466, 845 P2d 926 (1992), *rev den* 316 Or 528 (1993) (prejudgment interest was proper where damages included certain monthly payments made after the breach, because the dates on which the payments were made were easily ascertained); *Sch. Dist. No. 1 v. Mission Ins. Co.*, 58 Or App 692, 714-15, 650 P2d 929 (1982), *rev den* 294 Or 682 (1983) (prejudgment interest was proper where amounts paid by insured in settlement and to defense lawyers after

insurer breached duty to defend were easily ascertainable). Reliance's other arguments concerning prejudgment interest do not require discussion.

Reversed and remanded for further proceedings consistent with this opinion.

**RIGGS, J.,** concurring in part; dissenting in part.

I agree with the majority's disposition of every issue except the question of Reliance's duty to defend plaintiffs in Ballinger's and Sutfin's state court actions. For the reasons that follow, I conclude that Reliance had a duty to defend plaintiffs in those actions.

The majority concludes that the only possible reading of Ballinger's and Sutfin's state court complaints leads to an inevitable conclusion that the harms alleged fell within the "employer's liability" exclusion contained in the insurance policy. 151 Or App at 414-17. The majority concludes that Ballinger's and Sutfin's alleged injuries must have involved "bodily injury to an employee of the insured arising out of and in the course of employment by the insured," primarily because Ballinger and Sutfin alleged that plaintiffs were liable for the actions of Pearce and Mahoney under the theory of *respondeat superior*, "which applies only if the tortious conduct occurred during the course of employment." Id. at 415. "*Respondeat superior*—literally, 'let the superior reply'— is a legal theory by which an employer is held liable for the tortious conduct of an employee committed in the scope of employment." *Lourim v. Swensen*, 147 Or App 425, 431, 936 P2d 1011 (1997). *Respondeat superior* has to do with the relationship between one tortfeasor and another, but has nothing to do with the relationship between a tortfeasor and a victim. The allegations in Ballinger's and Sutfin's complaints that plaintiffs were vicariously liable for the actions of Pearce and Mahoney under the theory of *respondeat superior* at most can be read as allegations that Pearce and Mahoney committed the acts in question within the scope of *their* employment. It simply does not follow that Ballinger and Sutfin were likewise within the scope of *their* employment just because Pearce and Mahoney were.

The majority claims that "there was no mention of tortious conduct occurring other than on the job." 151 Or App at 415. While it is true that the complaints did not specify whether any tortious conduct occurred "off the job," it must also be noted that the complaints did not specify whether the tortious conduct occurred "on the job." It is entirely possible, given the language of the complaints, that Ballinger and Sutfin could have introduced evidence of tortious conduct that occurred while Pearce and Mahoney were within the scope of their employment with plaintiff, but Ballinger and Sutfin were *not* within the scope of their employment with plaintiff. If that were the case, the "employers liability" exclusion would not have applied.

If a claim stated in a complaint could, without amendment, impose liability for conduct covered by the insurance policy, an insurer has a duty to defend that claim. *Ledford v. Gutoski*, 319 Or 397, 400, 877 P2d 80 (1994). If the allegations are ambiguous or unclear but may reasonably be interpreted to include incidents within the coverage of the policy, the insurer has a duty to defend the claim. *Cooper v. Commonwealth Land Title Ins. Co.*, 73 Or App 539, 542, 699 P2d 1128, *rev den* 299 Or 583 (1985). Any ambiguities in this regard must be resolved against the insurer. *Ledford*, 319 Or at 400. Ballinger's and Sutfin's state court complaints, without amendment, could have permitted introduction of evidence of tortious conduct that did not occur within the scope of Ballinger's and Sutfin's employment with plaintiffs. Reliance therefore had a duty to defend plaintiffs in Ballinger's and Sutfin's state court actions.

I respectfully dissent.

Deits, C. J., and Leeson and Armstrong, JJ., join in this concurring and dissenting opinion.