Date: December 23, 1999


Case Number : 03-98-00025-CV

Trial Court No.: 97-06980


Style: Louis S. Zimmerman and Janet Zimmerman v. Chicago Title
Insurance Company


You are hereby notified that appellee's motion to publish opinion in the above
cause was submitted and granted by this Court on the date noted above. The
enclosed substituted page six (6) reflecting that the opinion is released for
publication was sent this date to the following persons:


TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00025-CV






Louis S. Zimmerman and Janet Zimmerman, Appellants



v.



Chicago Title Insurance Company, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 97-06980, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING 







 The issue presented is whether appellee Chicago Title Insurance Company
("Chicago Title") owed a duty to defend its insureds, appellants Louis Zimmerman and Janet
Zimmerman, in a separate case litigated in Travis County. On cross-motions for summary
judgment, (1) the district court rendered judgment that Chicago Title had no duty to defend. We will
affirm the district court's judgment.

 In 1988, the Zimmermans purchased residential property in Austin and obtained
a policy of insurance from Chicago Title insuring title to that property. (2) The policy obligates
Chicago Title to defend the Zimmermans against any action in which a claim adverse to their title
is asserted, unless the claim is based on matters excepted by the policy. In the separate litigation
underlying this dispute, the Zimmermans were sued by the owners of adjoining property, Mary
Joseph and her four daughters, who asserted title by adverse possession to a twelve- to twenty-inch strip of land insured under the Zimmermans' policy. Chicago Title refused the Zimmermans'
request to defend them against the suit.

 The Zimmermans sued Chicago Title for a declaration that it owed a duty under
the policy to defend them in the underlying suit. The Zimmermans subsequently moved for partial
summary judgment, asserting that Chicago Title had relied on four policy exclusions to refuse
their defense, none of which applied. Chicago Title filed its own motion for summary judgment,
arguing that each of the claimed exclusions justified its refusal to defend. Following a hearing,
the district court rendered an order denying the Zimmermans' motion and granting summary
judgment for Chicago Title.

 By two issues on appeal, the Zimmermans challenge the district court's grant of
Chicago Title's motion and the denial of their own motion. Whether Chicago Title owes a duty
to defend the Zimmermans under their title insurance policy is a question of law. State Farm
Gen. Ins. Co. v. White, 955 S.W.2d 474, 475 (Tex. App.--Austin 1997, no pet.). We therefore
review the cross-motions for summary judgment to determine whether either Chicago Title or the
Zimmermans established the right to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Jones
v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988).

 To determine whether an insurer must defend its insured against a lawsuit, we read
the factual allegations in the pleadings in light of the language of the policy. Trinity Univ. Ins.
Co. v. Cowan, 945 S.W.2d 819, 821 (Tex. 1997). The focus is on the facts, not the legal
theories, alleged. If a petition does not allege facts within the scope of coverage, an insurer is not
legally required to defend a suit against its insured. National Union Fire Ins. Co. v. Merchants
Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997). By what is sometimes referred to as
the "eight corners" rule, we do not look beyond the language of the policy and the allegations in
the pleadings. Id. In a case of doubt as to whether the allegations state a cause of action within
the coverage of a policy, we must construe the allegations in the insured's favor. Heyden Newport
Chem. Corp. v. Southern Gen. Ins. Co., 387 S.W.2d 22, 26 (Tex. 1965).

 The Zimmermans' policy excepts from coverage the "rights of parties in
possession." Chicago Title asserted in its summary-judgment motion that this exception negated
its duty to defend the Zimmermans in the underlying lawsuit. The exception for claims by parties
in possession is a standard exception from coverage specifically relating to claims such as adverse
possession. See 11 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 159.70, at 159-86 (1998 ed.). The rationale for the exception, at least in part, is that possession of land should
put the insured on notice of an adverse interest. See id.

 The character of possession sufficient to give an insured notice is that which is
open, visible, unequivocal, exclusive, and actual rather than constructive. Shaver v. National
Title & Abstract Co., 361 S.W.2d 867, 869-70 (Tex. 1962). Thus, power lines that extended onto
the insureds' property from poles that were just off the property, but clearly visible, constituted
possession sufficient to put the insureds on notice of a claim to possession. Halvorson v. National
Title & Abstract Co., 391 S.W.2d 112, 113-14 (Tex. Civ. App.--Tyler 1965, no writ); see also
Jupe v. City of Schertz, 604 S.W.2d 405, 408 (Tex. Civ. App.--San Antonio 1980, writ ref'd
n.r.e.) (public's use of gravel road on insureds' property was sufficient possession). In contrast,
a gas pipeline buried four feet beneath the insureds' land, with no sign of its presence on the
surface, was not possession sufficient to give the insureds' notice of a claim to their property. 
Shaver, 361 S.W.2d at 869-70.

 In the adverse-possession suit, members of the Joseph family alleged that they
owned the property bordering the Zimmermans' to the north. Shortly after buying the property
in 1936, plaintiff Mary Joseph and her husband built a picket fence along the southern boundary
of the property. The fence extended from the end of an existing rock wall on the east to the
southwestern corner of the property. Mr. and Mrs. Joseph landscaped the property up to the
fence. The Josephs built the fence to mark the southern boundary of their property, and at all
times while it stood, both they and the Zimmermans' predecessors-in-title treated the picket fence
line as the boundary between the two properties.

 Some time after 1965, the Josephs alleged, the fence was removed, but fence posts
remained along the boundary line. At about the same time, the Zimmermans' immediate
predecessors-in-title put up a chain-link fence along the back portion of the original picket fence. 
The chain-link fence and the rock wall continued to mark the boundary claimed by the Josephs. 
In the gap between the rock wall and the chain-link fence, the several fence posts remaining from
the original picket fence were sawed close to the ground. Mrs. Joseph painted the tops of these
fence posts white to continue to mark the boundary of her property. Until the Zimmermans
purchased the property in 1988, the Josephs and the owners immediately preceding the
Zimmermans continued to treat the former picket fence line as the boundary between their
properties.

 The Josephs further alleged that, when the Zimmermans bought the property, they
obtained a survey. The survey clearly showed that both the rock wall and the chain-link fence lay
inside the Zimmermans' property line. Nevertheless, the Josephs treated the old picket fence line,
marked by the chain-link fence, the end of the rock wall, and the old fence posts in between, as
the southern boundary of their property. Mrs. Joseph continued to landscape along the line, and
before 1997 the Zimmermans made no attempt to use the strip of land between the old picket
fence line and the survey line. Several years before the Josephs filed suit, the Zimmermans
erected a lattice fence in the gap between the chain-link fence and the rock wall. This fence
occupied substantially the same position as the old picket fence. Mrs. Joseph planted rose bushes
on her side of the lattice fence. The Josephs claimed title to the strip of land by adverse
possession. See Tex. Civ. Prac. & Rem. Code Ann. §§ 16.026 (West 1986 & Supp. 1999), .030
(West 1986).

 We believe the Josephs alleged a character of possession that was sufficient to give
notice to the Zimmermans of their claim. The Josephs specifically alleged that, after the picket
fence was removed, fence posts remained in the ground marking the boundary they claimed. 
Although the posts were sawed close to the ground, Mrs. Joseph painted the tops white to show
the boundary line, and the Josephs landscaped the property to that line. The owners immediately
preceding the Zimmermans acquiesced in the Josephs' occupation of the strip of land by erecting
a chain-link fence along the line of the former picket fence. The chain-link fence was present
when the Zimmermans bought the property. The Zimmermans themselves put up a lattice fence
along the old picket fence line between the rock wall and the chain-link fence, and Mrs. Joseph
planted rose bushes on her side of the lattice fence. In sum, the Josephs alleged that they
possessed the strip of land in a manner that was open, visible, unequivocal, and exclusive.

 The Josephs' allegations of possession thus met the exception in the policy for the
rights of parties in possession. Because Chicago Title asserted a ground in its motion that entitled
it to judgment as a matter of law, the district court correctly rendered summary judgment in its
favor. Chicago Title's entitlement to judgment on this ground necessarily foreclosed summary
judgment in the Zimmermans' favor. We therefore overrule both the first and second issues
raised by the Zimmermans.

 We affirm the judgment of the district court.



 


 Lee Yeakel, Justice

Before Justices Jones, Kidd and Yeakel

Affirmed

Filed: June 17, 1999

Do Not Publish  Released for publication December 23, 1999. Tex. R. App. P. 19.3(e) & 47.
1. The Zimmermans' motion was for partial summary judgment declaring that Chicago Title
owed the Zimmermans a duty to defend in the underlying case.
2. The policy was issued by Ticor Title Insurance Company of California. After Ticor issued
the policy, Ticor was purchased by Chicago Title and is a wholly-owned subsidiary of Chicago
Title.



6, plaintiff Mary Joseph and her husband built a picket fence along the southern boundary
of the property. The fence extended from the end of an existing rock wall on the east to the
southwestern corner of the property. Mr. and Mrs. Joseph landscaped the property up to the
fence. The Josephs built the fence to mark the southern boundary of their property, and at all
times while it stood, both they and the Zimmermans' predecessors-in-title treated the picket fence
line as the boundary between the two properties.

 Some time after 1965, the Josephs alleged, the fence was removed, but fence posts
remained along the boundary line. At about the same time, the Zimmermans' immediate
predecessors-in-title put up a chain-link fence along the back portion of the original picket fence. 
The chain-link fence and the rock wall continued to mark the boundary claimed by the Josephs. 
In the gap between the rock wall and the chain-link fence, the several fence posts remaining from
the original picket fence were sawed close to the ground. Mrs. Joseph painted the tops of these
fence posts white to continue to mark the boundary of her property. Until the Zimmermans
purchased the property in 1988, the Josephs and the owners immediately preceding the
Zimmermans continued to treat the former picket fence line as the boundary between their
properties.

 The Josephs further alleged that, when the Zimmermans bought the property, they
obtained a survey. The survey clearly showed that both the rock wall and the chain-link fence lay
inside the Zimmermans' property line. Nevertheless, the Josephs treated the old picket fence line,
marked by the chain-link fence, the end of the rock wall, and the old fence posts in between, as
the southern boundary of their property. Mrs. Joseph continued to landscape along the line, and
before 1997 the Zimmermans made no attempt to use the strip of land between the old picket
fence line and the survey line. Several years before the Josephs filed suit, the Zimmermans
erected a lattice fence in the gap between the chain-link fence and the rock wall. This fence
occupied substantially the same position as the old picket fence. Mrs. Joseph planted rose bushes
on her side of the lattice fence. The Josephs claimed title to the strip of land by adverse
possession. See Tex. Civ. Prac. & Rem. Code Ann. §§ 16.026 (West 1986 & Supp. 1999), .030
(West 1986).