**STATE FARM GENERAL INSURANCE COMPANY and State Farm Lloyds, Appellants,**

v.

**Janise WHITE, Douglas Wayne Perry, and Raul Quintero, Appellees.**

No. 03–96–00457–CV.

Court of Appeals of Texas, Austin.

Nov. 6, 1997.

Mark A. Lindow, Lindow & Treat, L.L.P., San Antonio, for appellants.

Lonnie Roach, Bemis, Roach & Reed, L.L.P., Austin, for appellees.

Before POWERS, ABOUSSIE and B.A. SMITH, JJ.

ABOUSSIE, Justice.

State Farm General Insurance Company and State Farm Lloyds ("State Farm") brought suit against their insureds, Janise White, Douglas Wayne Perry, and Raul Quintero (a/k/a Raul Quintero, Jr.) ("appellees"), seeking a declaratory judgment that State Farm owed no duty under its policies to defend appellees in the underlying suit. The trial court ruled against State Farm. Contending that the third party's claims against appellees are excluded from coverage under the intentional injury exclusion and by public policy, State Farm appeals the ruling. We will affirm the trial court's judgment.

## STATEMENT OF FACTS

This appeal arises out of circumstances involving the sexual abuse of children at a day care center. Plaintiffs, and intervenors in this case, Sean and Sandra Nash, sued numerous defendants, including appellees, on behalf of themselves and their minor children, for the sexual abuse of their children which occurred at the day care center operated by Daniel Bruno Keller and his wife, Francis Elayne Keller. Plaintiff's Third Amended Original Petition alleges that Daniel Keller physically and sexually abused the Nash children, as well as other children attending the day care center, while the children were in the center's care and custody. Such abuse occurred on a regular basis throughout the Nash children's attendance at the facility between March 25 and August 28, 1991. The petition further alleges that the children were taken from the day care center's premises to other nearby locations where Daniel Keller abused them and some-times allowed others to witness or participate in the abuse.

With respect to the appellees in this case, the petition alleges that Francis Keller confided in appellee White, her long-time friend and confidant, about Daniel Keller's abusive habits toward children. On one particular occasion in August 1991, the last month the Nash children attended the center, appellees were invited to the day care center, served alcoholic beverages, and observed Daniel Keller abuse unidentified children. The petition alleges that, although appellees witnessed the sexual abuse of these children at the day care center, they failed to report, stop, or prevent the abuse. As a result of their failure to take any action, the day care center remained in operation, and the Nash children suffered subsequent abuse. It is against these charges that State Farm seeks a declaratory judgment that it has no duty to defend appellees.

In two points of error, State Farm argues that it owes no duty to defend appellees because (1) the intentional injury exclusion clause of the policy applies and (2) public policy precludes a duty to defend. We disagree with both of appellant's contentions.

## ANALYSIS

 Whether an insurance carrier owes a duty to defend under an insurance policy is a question of law which the appellate court reviews de novo. *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 735 (Tex.App.—Fort Worth 1996, writ denied). Factual allegations in the pleadings and the policy language determine an insurer's duty to defend. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex.1997); *Kessler*, 932 S.W.2d at 736; *Mary Kay Cosmetics, Inc. v. North River Ins. Co.*, 739 S.W.2d 608, 612 (Tex.App.—Dallas 1987, no writ). In considering the allegations in the petition to determine whether they fall within the provisions of the insurance policy, we must apply a broad interpretation to the meaning of those allegations. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex.1965); *Mary Kay*, 739 S.W.2d at 612. The inquiry into an insurer's duty to defend

focuses on facts alleged, not legal theories. *Kessler,* 932 S.W.2d at 736.

Under its policy, State Farm must defend suits against the insured arising from bodily injury or property damage except for bodily injury or property damage caused intentionally by, or at the direction of, the insured. The parties agree that the three appellees are insured by State Farm policies which entitle them to a defense against the Nash claims unless the exclusion clause applies.[1] State Farm's standard homeowners' policy provides, in relevant part:

SECTION II—LIABILITY SECTION

COVERAGE D—PERSONAL LIABILITY

[The Company] agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the Company shall defend any suit against the Insured alleging bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the Company may make such investigation and settlement of any claim or suit as it deems expedient.

EXCLUSIONS—Coverage D Shall not apply:

\* \* \* \* \*

5. To bodily injury or property damage caused intentionally by or at the direction of the Insured. . . .

"Bodily Injury" is defined as "bodily injury, sickness or disease, including death resulting therefrom, sustained by any person."

■ State Farm argues that the language of the petition filed against appellees triggers the intentional injury exclusion. For this to be true, we must read the petition to allege facts which constitute intentional acts by the appellees. We do not. The facts alleged in the petition are that White was Francis Keller's long-time friend and confidant; that White knew about Daniel Keller's abusive habits toward children; that appellees were invited to the day care center, served alcoholic beverages, and watched Daniel Keller abuse unidentified children; and that appellees failed to report the abuse. The pleadings do not allege an intent to harm, as the factual recitations contained in the petition do not allege any intentional acts by appellees. Instead, the Nashes have presented facts constituting and expressly accusing appellees of negligence in failing to report the abuse; thus, the language of the petition does not trigger the intentional injury exclusion.

■ Even though appellees did not know or see the Nash children, State Farm asserts that the intentional injury exclusion applies because appellees' omission was intentional conduct under the "substantial certainty" test discussed in *State Farm Fire & Casualty Co. v. S.S.,* 858 S.W.2d 374, 378 (Tex.1993). Relying on the proposition that "an insured intends to injure or harm another if he intends the consequences of his acts, or believes that they are substantially certain to follow," *Id.,* State Farm argues that appellees' failure to report the abuse was substantially certain to cause injury to children in the day care, and therefore, falls within the intentional injury exclusion. However, the supreme court also explained in *S.S.* that

the defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong.

*Id.* (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts,* § 8, at 35–36 (5th ed.1984)). While appellees' failure to report the witnessed abuse may have placed children in an appreciable risk of harm, there is no evidence that appellees knew with substantial certainty that any children, including

---

1. White's policy provides $300,000.00 in personal liability coverage for each occurrence, and Perry is an insured by definition under White's policy. Quintero also has a $300,000.00 personal liability policy. Because the policy provisions at issue are identical, they will be referred to collectively as "the policy."

the Nash children, would be abused as a result of their failing to report.[2]

■ Finally, State Farm contends that the claims are excluded from coverage because intent to injure may be inferred as a matter of law in sexual molestation cases. State Farm bases its position on the child molestation cases in which intent to injure has been inferred on the part of the actual molester. *See J.E.M. v. Fidelity & Casualty Co.*, 928 S.W.2d 668, 675 (Tex.App.—Houston [1st Dist.] 1996, no writ) (explaining that the general rule nationwide is to infer intent to injure in situations involving an adult's sexual molestation of children); *Allen v. Automobile Ins. Co.*, 892 S.W.2d 198, 201 (Tex.App.—Houston [14th Dist.] 1994, no writ) (holding the insurance company has no duty to defend the actual molester of a child since sexual molestation is an intentional injury as a matter of law); *Maayeh v. Trinity Lloyds Ins. Co.*, 850 S.W.2d 193, 197 (Tex.App.—Dallas 1992, no writ) (finding that an intent to harm can be inferred as a matter of law in sexual molestation cases and declaring that an insurance company had no duty to defend an insured accused of sexual molestation). While this Court recognizes that intent to injure can be inferred in cases involving the actual molester, here the actual molester is not the actor seeking a defense under State Farm's policy. Appellees are not the ones who physically molested the Nash children. Rather, they were bystanders to the abuse of other children and failed to report the abuse. Since *J.E.M.*, *Allen*, and *Maayeh* all involve the actual molesters, these cases are distinguishable and, therefore, not controlling.

Additionally, State Farm argues that intent to injure can be inferred if "the character of an act is such that the 'degree of certainty that the conduct will cause injury is sufficiently great to justify inferring intent to injure as a matter of law.'" *S.S.*, 858 S.W.2d at 379 (citing *Loveridge v. Chartier*,

161 Wis.2d 150, 468 N.W.2d 146, 151 (1991)). In making this argument, State Farm again attempts to convert appellees' omission into an act. While intent may be inferred from an affirmative act, it is difficult to infer intent from a failure to act.[3] Furthermore, the language in *S.S.* specifically refers to acts; it does not suggest that intent to injure can be inferred from omissions. Appellees' omission, while troubling, cannot as a matter of law justify the inference of intent to injure under these circumstances.

We hold that the intentional injury exclusion under the policy does not relieve State Farm of its duty to defend its insureds, the appellees, from the claims in the underlying action. State Farm's first point of error is overruled.

■ In its second point of error, State Farm argues that public policy precludes a duty to defend. To support its argument, State Farm argues that the policy was not intended to cover claims for sexual misconduct and that appellees' failure to report the abuse they observed violated provisions of both the Texas Family Code and Texas Penal Code. *See* Tex. Fam.Code Ann. §§ 261.001, .101, .109 (West 1996); Tex. Penal Code Ann. §§ 21.11, 22.011, 43.25 (West 1994). While this may be true, State Farm has the ability to draft policies which expressly exclude such coverage. It was the responsibility of State Farm to devise an insurance plan which would clearly prevent coverage for these types of claims. We hold that public policy does not preclude a duty to defend in this case. State Farm's second point of error is overruled.

## CONCLUSION

State Farm asks the Court to hold that there is no duty to defend bystanders who fail to report child abuse because this failure

---

2. Since appellees' omission cannot be deemed an intentional act under the substantial certainty test due to lack of evidence, we do not reach the merits of State Farm's argument that appellees only had to be substantially certain that *some* children would be molested as a result of their failure to report and that they did not have to be substantially certain that the Nash children would be molested.

3. The Court notes that there are a myriad of reasons why one might fail, even wrongfully, to report abuse other than intent to injure children. For example, reluctance to become involved in legal proceedings or fear of criminal prosecution might prevent someone from reporting child abuse.

intentionally causes bodily injury to children who are subsequently abused. This we decline to do. Furthermore, holding State Farm to the terms of its own insurance policy and requiring it to defend against claims which fall within coverage does not offend public policy. The judgment of the trial court is affirmed.