**BANKERS MULTIPLE LINE INSURANCE COMPANY, INC., Plaintiff,**

v.

**Robert Scott PIERCE, Individually, Kim Hanberry, Allan Pittman, Robert Scott Pierce d/b/a Preferred Realty & Management, Light–Sea Properties, Inc., Connie Parker, Darlene Walrod, Jerry Pierce, and Joyce Pierce, Defendants.**

No. 2:96CV18PG.

United States District Court, S.D. Mississippi, Hattiesburg Division.

Aug. 4, 1998.

Carey R. Varnado, Frank D. Montague, Jr., Montague, Pittman & Varnado, Hattiesburg, MS, for Plaintiff.

Maura D. McLaughlin, McLaughlin & Gore, Hattiesburg, MS, James L. Quinn, Zachary & Leggett, Hattiesburg, MS, for Defendant.

## MEMORANDUM OPINION AND ORDER

GUIROLA, United States Magistrate Judge.

Bankers Multiple Line Insurance Company, Inc. ("BML"), issued two errors and omissions insurance policies to Robert Scott Pierce and Preferred Realty & Management. In 1996, several state court judgments were entered against Robert Scott Pierce d/b/a Preferred Realty. BML has filed a 28 U.S.C. § 2201 Complaint for Declaratory Judgment in which it seeks judicial determination of its duty to indemnify insured.

Before this Court is BML's Motion for Summary Judgment in which BML contends that the state court judgments against Robert Scott Pierce d/b/a Preferred Management resulted from conduct which is excluded from coverage under the provisions of the policies. Defendants argue that the damages and the resulting state court judgments stem from a finding that Robert Scott Pierce d/b/a Preferred Realty had been guilty of negligent employee supervision. Since negligent acts or omissions are covered under the terms of the policies, Defendants contend that BML has a duty to indemnify its insured.

## FACTS

In 1991 or 1992, Kimberly Hanberry sought to operate Preferred Realty & Management. In order for Hanberry to legally operate Preferred Realty & Management she needed a real estate broker's license. During that time, Hanberry was supposedly in the process of obtaining a valid real estate broker's license. In the interim she entered into an agreement with Robert Scott Pierce, who possessed a Mississippi real estate broker's license. Under their agreement, Pierce would be paid a monthly fee while Hanberry utilized his broker's license to operate Preferred Realty & Management. Preferred Realty & Management was engaged in the business of rental property management. Hanberry was responsible for the general management of client properties. She collected unit deposits and rents, held funds in escrow and dispersed funds to the owners and creditors. Other than his $500 monthly fee for the use of his real estate broker's license, Pierce did not participate in the daily operations of Preferred Realty & Management.

In October of 1994, BML issued Real Estate Licensees' Errors and Omissions Liability Policy No. 94 EO 4161MS to Preferred Realty & Management. An identical policy, No. 94 EO 5260MS was issued to Robert Scott Pierce. The policies would indemnify the insured for damages arising "out of an error, omission or negligent act relating to the rendering of or failure to render Professional Services by or on behalf of an Insured." *See* BML Policies, Section I.—Coverage, pg. 2.

In 1995, clients of Preferred Realty & Management including Light–Sea Properties Inc., Connie Parker, Hugh Parker and Darlene Walrod, filed several civil complaints in the Circuit Court of Lamar County, Mississippi. According to the state court complaints, Kim Hanberry had misappropriated and fraudulently converted client funds. Apparently, Hanberry had misappropriated and

converted fire insurance proceeds belonging to Hugh Parker and Darlene Walrod, converted rental unit damage deposits which were the property of Hugh and Connie Parker, and converted apartment damage deposits which belonged to Light–Sea Properties, Inc. The cases were consolidated and eventually went to trial. The state court plaintiffs proceeded against Pierce individually and Pierce d/b/a Preferred Realty on the theory of negligent supervision of its employee. At the conclusion of the trial, the state court judge granted a peremptory instruction finding that Pierce d/b/a Preferred Realty had been guilty of negligent supervision of Hanberry. The jury returned verdicts in favor of the state court plaintiffs and the court entered judgments totaling $37,351.00 against Robert Scott Pierce d/b/a Preferred Realty.[1] The parties do not contest the fact that $18,666.90 represents the total amount of the state court judgments which can be attributed to the individual conduct of Hanberry.[2]

In its Motion for Summary Judgment, BML contends that the language of the errors and omissions insurance policies specifically exclude the type of conduct engaged in by Hanberry. Defendants argue that since the judgments against Pierce d/b/a Preferred Realty are based upon its negligent supervision of Hanberry, BML should indemnify its insured for the resulting losses. In addition, Defendants argue that modifying language in the exclusions portion of the policies provides coverage for the intentional acts of Hanberry.

### DISCUSSION

■ Under Mississippi law, if an insurance policy is unambiguous, its terms must be given their plain meaning and enforced as written. *American States Ins. Co. v. Nethery*, 79 F.3d 473, 475 (5th Cir.1996). In order to benefit from an exclusionary provi-

sion in an insurance contract, the insurer must show that the exclusion applies and that it is not subject to any other reasonable interpretation that would afford coverage. The court must strive to give effect to the parties' intention, as expressed by the plain language of the policy, but where there are two or more reasonable interpretations of a clause, the court will adopt the interpretation that provides coverage. *Canal Ins. Co. v. T.L. James & Co., Inc.*, 911 F.Supp. 225, 228 (S.D.Miss.1995), citing *Nationwide Mut. Ins. Co. v. Garriga*, 636 So.2d 658 (Miss.1994).

■ The policies issued to Pierce and Preferred Realty contain, among others, the following exclusion:

SECTION VI.—EXCLUSIONS

1. This insurance does not apply to claims:

(a) arising out of a dishonest, fraudulent, criminal or malicious act, error, or omission, if committed by, at the direction of, or with the knowledge of the Insured. (This Exclusion does not apply to an Insured who did not personally participate in committing such an act or omission and who, upon having knowledge of the act or omission, reported it);

(k) arising out of the conversion, misappropriation, commingling, or defalcation of funds or other property.

The Defendants do not contest the fact that Kimberly Hanberry engaged in conduct that amounts to the "conversion, misappropriation, commingling, or defalcation" of funds belonging to clients of Preferred Realty & Management and that the state court civil lawsuits "arise out of" such conduct. Neither do the Defendants contest the proposition that Hanberry's individual conduct is excluded under section VI 1.(k) of both policies. Instead, Defendants argue that the state court judgments against Robert Scott

---

1. Judgments were entered in favor of Hugh Parker and Darlene Walrod against Defendant Robert Scott Pierce d/b/a Preferred Realty, in the amount of $22,026.00; in favor of Hugh Parker and Connie Parker, in the amount of $2,550.00; and in favor of Light–Sea Properties, Inc., in the amount of $12,775.00.

2. Of the $22,026.00 Judgment in favor of Hugh Parker and Darlene Walrod, $17,298.90 is attributed to the intentional conduct of Hanberry. Of the $2,500.00 Judgment in favor of Hugh and Connie Parker, $200.00 is attributed to the intentional conduct of Hanberry. Of the $12,775.00 Judgment in favor of Light–Sea Properties, Inc., $1,168.00 is attributed to the intentional conduct of Hanberry.

Pierce d/b/a Preferred Realty are based upon the **negligent supervision** of Hanberry. In other words, Defendants contend that Pierce's negligent failure to properly supervise Hanberry was the proximate cause of Defendants' losses, thus Pierce's negligent acts or omission are covered under the policies. The Defendants are partially correct. Pierce's negligent supervision of Hanberry was a contributing cause of Defendants' losses. The state court concluded as much when it granted a peremptory instruction on the issue. However, a finding of negligent supervision on the part of the insured, Robert Scott Pierce d/b/a Preferred Realty, does not necessarily mean that BML is required to indemnify insured under the terms of the errors and omissions policies. The flaw in Defendants' argument stems from their tendency to focus on the conduct of Pierce without considering the effects of Hanberry's wrongful acts.

Neighboring jurisdictions have long held that no coverage is provided an employer for claims of negligent hiring or supervision when the underlying tortious conduct is intentional (and thus excluded) and when those claims against the employer or supervisor are related to and are interdependent on the employee's intentional misconduct. *Cornhill Insurance PLC v. Valsamis, Inc.,* 106 F.3d 80, 87 (5th Cir.1997) ("[W]here liability premised on negligence is related to and interdependent of other tortious activities, the 'ultimate issue' is whether the tortious activities themselves are encompassed by the 'occurrence' definition."); *New York Life Ins. v. Travelers Ins. Co.,* 92 F.3d 336, 339 (5th Cir.1996) (excluding claims for negligent hiring, training, and supervision against employer that were "related to" and "interdependent on" claim of fraud by employee because employee's intent is imputed to employer); *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 99 F.3d 695, 703 (5th Cir.1996) ("Where the legal claims asserted by the plaintiffs are not independent and mutually exclusive, but rather related to and dependent upon excluded conduct, the claims are not covered, even if asserted against an insured who did not himself engage in the prohibited conduct."); *Old Republic Ins. Co. v. Comprehensive Health*

*Care Assoc., Inc.,* 786 F.Supp. 629, 632 (N.D.Tex.1992), *aff'd on other grounds,* 2 F.3d 105 (5th Cir.1993) (finding no duty to defend insured against claim of negligent hiring when the claim of negligent hiring arises out of agent's intentional sexual harassment); *Columbia Mut. Ins. Co. v. Fiesta Mart, Inc.,* 987 F.2d 1124, 1128 (5th Cir.1993) (holding that under Texas law, where liability of insured and liability of its agent were "related and interdependent," court must look to whether agent's fraud was covered by policy); *Huey T. Littleton Claims, Inc. v. Employers Reinsurance Corp.,* 933 F.2d 337, 339 (5th Cir.1991) (holding that under Louisiana law, dishonest act exclusion in employer's commercial liability policy excluded negligence and vicarious liability claims against employer for losses based upon the excluded conduct of its employee).

In *American Guarantee & Liability Insurance Co. v. The 1906 Company,* 129 F.3d 802 (5th Cir.1997), an employee of Hattiesburg Coca–Cola had surreptitiously videotaped models in a photography studio dressing room. Numerous women filed lawsuits against the individual employee and Hattiesburg Coca–Cola alleging intentional and negligent causes of action. Insurance policies issued to Hattiesburg Coca–Cola excluded deliberate acts. While no one contested the fact that the individual employee's conduct was excluded by the "deliberate acts" exclusion, Hattiesburg Coca–Cola argued that their own conduct "was neither intended nor expected" and therefore covered under the terms of the policy. The Court held:

Although we have found no Mississippi cases addressing this issue, this Court, in applying the law of neighboring jurisdictions, has repeatedly rejected this argument. These cases hold that no coverage is provided the employer or supervisory personnel for claims of negligent hiring or supervision when the underlying tortious conduct is intentional and when those claims against the employer or supervisor are related to and are interdependent on the employee's intentional misconduct (citations omitted) ... Although a close question, we conclude that Mississippi courts

would likely follow the lead of neighboring jurisdictions and hold that where negligence claims against an employer, such as negligent hiring, negligent training, and negligent entrustment, are related to and interdependent on the intentional misconduct of an employee, the "ultimate question" for coverage purposes is whether the employee's intentional misconduct itself falls within the definition of an occurrence. As we explained in New York Life, the issue turns largely on principles of agency and imputed intent (citations omitted) ... We believe Mississippi courts would apply these same principles in resolving the issue. *American,* 129 F.3d at 809–810.

Finally, Defendants argue that the last sentence in section VI 1.(a) contains language which modifies the exclusion and provides Pierce d/b/a Preferred Realty coverage for Hanberry's "dishonest, fraudulent, criminal or malicious" acts and omissions. Defendants' contention is unavailing. The exclusion in section VI 1.(a) "does not apply to an insured who did not participate in committing such an act or omission and who, upon having knowledge of the act or omission, reported it." However, this language applies to section VI 1.(a) only, and does not otherwise modify any other exclusion in the policy. Therefore, even assuming that coverage for Hanberry's "dishonest, fraudulent, criminal or malicious" conduct was not excluded under section VI 1.(a), as noted above, BML is entitled to rely on the exclusion contained in section VI 1.(k).

### CONCLUSION

But for the actions of Hanberry, the state court plaintiffs would not have suffered losses. The claims against Pierce d/b/a Preferred Realty for negligent supervision of Hanberry are related and interdependent upon Hanberry's wrongful conduct. Because the injuries arising out of Hanberry's "conversion, misappropriation, commingling, or defalcation of funds or other property" are clearly excluded under the unambiguous terms of the errors and omissions insurance policies, the related negligence claims against Pierce d/b/a Preferred Realty are likewise excluded. After consideration of Plaintiff's

Motion for Summary Judgment, the responses, the pleadings, summary judgment evidence, arguments of counsel and the relevant authority, it is the opinion of the Court that there exists no genuine dispute as to any material fact and that Plaintiff is entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment filed September 3, 1997, should be and is hereby **GRANTED.**