**Carlyle KING, individually and d/b/a Tiedown Construction Company, Appellant,**

v.

**DALLAS FIRE INSURANCE COMPANY, Appellee.**

**No. 01–99–00442–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

July 6, 2000.

Rehearing Overruled Sept. 21, 2000.

(King), appeals from a declaratory summary judgment in favor of appellee, Dallas Fire Insurance Company (Dallas Fire), which had issued a commercial general liability policy to King. The sole issue on appeal is whether the summary judgment proof shows, as a matter of law, that Dallas Fire has no legal duty to defend King in a personal injury suit brought against King by a third party. We affirm, concluding that the insurance policy in question does not require Dallas Fire to defend King in the underlying action.

## Suit Against King

In 1997, Greg Jankowiak sued Carlyle King individually and d/b/a Tiedown Construction Company in the District Court of Harris County, alleging that one of King's employees, Carlos Lopez, while working for King, had "attacked" Jankowiak and kicked him in the face when he, Jankowiak, was down on his hands and knees. Jankowiak also alleged that Lopez, as an employee of King, was "negligent in reacting to [Jankowiak's] verbal confrontation," and that King was therefore liable to Jankowiak on the basis of the doctrine of respondeat superior. Jankowiak further alleged that King was liable for the injuries to Jankowiak because of King's "negligent hiring, training, and supervision" of Lopez.

King forwarded the Janowiak petition to Dallas Fire, which refused to defend on the ground the petition did not allege an "occurrence" within the meaning of the policy. Jankowiak later amended its petition to allege that Lopez had "negligently reacted to a business based confrontation about property damage that [Jankowiak] reasonably believed Defendant Lopez caused." In this amended pleading, Jankowiak also alleged that King was liable for "negligent hiring, lack of adequate training, and lack of adequate supervision" of Lopez. The amended petition further

Richard Gardner Wilson, Robert Higgason, Houston, for Appellant.

Ronald E. Tigner, Cynthia A. Holub, Greenberg, Peden, Siegmyer & Oshman, P.C., Houston, for Appellee.

Panel consists of Justices MIRABAL, NUCHIA, and EVANS.[*]

## OPINION

FRANK G. EVANS, Justice (Retired).

Appellant Carlyle King, individually and d/b/a Tiedown Construction Company

[*] The Honorable Frank G. Evans, retired Chief Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

asserted that King had "negligently failed to run any background criminal check or prior employment check" on Lopez before hiring him and had "negligently failed to determine whether Defendant Lopez had an unreasonable or past propensity for violence." The petition further alleged that King had not provided Lopez with any written or verbal training "about safety matters or about how to peaceably and responsibly handle work generated construction site situations...." After receipt of this amended petition, Dallas Fire again asserted the suit did not allege an "occurrence" within the meaning of the policy coverage, and therefore, that it had no legal duty to defend King. King then brought this declaratory judgment action asking the court to determine that Dallas Fire was legally obligated under the policy to defend the underlying action against him. Dallas Fire responded with affirmative defenses of (1) no coverage, i.e., no "occurrence" alleged within the meaning of the policy, and (2) the exclusion of coverage because the injury was intentional.

### Motions for Summary Judgment

Dallas Fire moved for summary judgment alleging there was no "accident" and no "occurrence," because Lopez's intentional conduct resulted in an injury that ordinarily followed or could reasonably be anticipated from such intentional conduct. King responded by filing his own motion for summary judgment stating that, at the time of Lopez's hiring, training and supervision, King clearly did not intend or reasonably anticipate that Lopez would assault Jankowiak, and, that from King's perspective, the occurrence was clearly an "accident." Thus, King asserted, his alleged errors in hiring, supervising, and training Lopez were "accidents," and the plaintiff's petition in the underlying case alleged an "occurrence" within the meaning of the policy provisions. King further asserted that the intentional injury exclusion does not apply to the facts of this case because the policy expressly requires that the plaintiff's allegations be examined *separately* in regard to each insured. Further, King asserts, he did not commit an intentional injury because he could not have been substantially certain, when he hired Lopez, that Lopez would assault Jankowiak.

### Standard of Review

To be entitled to summary judgment, Dallas Fire, as defendant in the trial court, was required to show, as a matter of law, that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action. TEX.R. CIV. P. 166a(b); *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 774 (Tex.1995); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). In essence, Dallas Fire was required to conclusively disprove one or more of the essential elements of the plaintiff's cause of action. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 476–77 (Tex. 1995); *Union Pump*, 898 S.W.2d at 774. In reviewing the summary judgment record, we must consider the evidence in the light most favorable to the non-movant and resolve any doubt in the non-movant's favor. *Doe*, 907 S.W.2d at 477.

### Duty to Defend

■ Under Texas law an insurer's duty to defend must be determined from the allegations of the plaintiff's petition in the underlying action, considered in the light of the policy provisions, and without reference to the truth or falsity of such allegations. *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973). Thus, the insurer has the burden of demonstrating that the allegations in the plaintiff's petition are excluded from coverage under the policy. *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex. App.—Houston [14th Dist.] 1993, writ denied). Any doubt regarding the interpretation of the plaintiff's petition must be resolved in favor of the insured. *Id.* Moreover, even if the plaintiff's allegations do

not clearly show there is coverage, the insurer, as a general rule, will be obligated to defend if there is, *potentially*, an action alleged within the coverage of the policy. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965).

▆▆▆ Because the question of an insurance carrier's contractual duty to defend is one of law, we must conduct a de novo review. *State Farm Gen. Ins. Co. v. White*, 955 S.W.2d 474, 475 (Tex.App.— Austin 1997, no writ). In deciding this legal question, we must focus our inquiry on the facts alleged in the underlying petition, not on legal theories. *Id.* Further, we must apply a broad interpretation to the allegations in the petition in determining their meaning under the language of the insurance policy. *National Union Fire Ins. Co. of Pittsburgh v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997); *White*, 955 S.W.2d at 475.

### The Plaintiff's Petition

The allegations in the plaintiff's amended petition allege that while he was working at the same apartment construction site as King's employee,[1] he noticed that some electric breakers and copper wire had been damaged or were missing. He also noticed some "bobcat" tracks and knew that King's company had been operating a bobcat while doing clean up work. The plaintiff alleges that he "tracked down and approached" King's employee, Lopez, who was driving the bobcat, and asked him about the breakers and copper wire. According to his allegations, the plaintiff and Lopez exchanged words and Lopez then attacked him and kicked him in the face, causing serious injuries. The plaintiff asserts that he had not intended physical violence when he confronted Lopez about "a business matter" and that Lopez, being untrained in how to handle such situations, "simply reacted negligently," jumping

from the bobcat and knocking him down. He states that even as Lopez's co-workers tried to restrain him, he managed to kick the plaintiff "exceedingly hard" in the face while the plaintiff was still down on his hands and knees. The plaintiff alleged that, as a result of the "assault," he had incurred extensive medical bills totaling approximately $46,000.

### The Dallas Fire Policy

King's commercial general liability policy, which was issued by Dallas Fire in 1995, provides in pertinent part:

**SECTION I COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement.**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

   . . . .

   b. This insurance applies to "bodily injury" and "property damage" only if:

   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

   (2) The "bodily injury" or "property damage" occurs during the policy period.

   . . . .

2. **Exclusions.**

   This insurance does not apply to:

   a. Expected or Intended Injury

---

1. Contrary to King's argument on appeal, Lopez's status as an insured employee is established by the allegations of the plaintiff's complaint. *See Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 499 (Tex.App.—Houston [14th Dist.] 1995, no writ).

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

. . . .

## SECTION IV COMMERCIAL GENERAL LIABILITY CONDITIONS

. . . .

### 7. Separation of Insureds.

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

. . . .

## SECTION V DEFINITIONS

. . . .

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . . .

5. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

. . . .

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

. . . .

12. "Occurrence" means an *accident,* including continuous or repeated exposure to substantially the same general harmful conditions.

(Emphasis added.) (The word "accident" is not defined in the policy.)

Dallas Fire has a duty to defend King in the underlying action only if the plaintiff's petition alleges an "occurrence" within the meaning of the Dallas Fire policy, and if King is not excluded from coverage under one of the policy exclusions. We first address whether the allegations in the plaintiff's petition show an "occurrence" within the meaning of the Dallas Fire policy.

### The Meaning of "Occurrence"

■ The Dallas Fire policy defines the word "occurrence" as meaning an "accident" so we must examine the allegations in the plaintiff's petition to determine whether there was an accidental event within the meaning of the policy definition. We find guidance in the words of the Texas Supreme Court, which has said that "accident" means an occurrence that is not the result of an intentional act and which could not reasonably have been anticipated by the party causing the occurrence. *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 827–28 (Tex.1997). We apply that criteria in determining whether there was an "occurrence" within the meaning of the policy. *See id.*

■ In deciding whether an event was accidental, as distinguished from a voluntary and intentional act, we must look to the nature of the act, rather than at the insured's subjective intent. *See Maupin,* 500 S.W.2d at 636 (finding an insured's willful trespass upon and removal of dirt from plaintiff's land not an accidental occurrence notwithstanding insured's *mistaken belief* it had true owner's authorization). An intentional act that results in injuries which would ordinarily follow from or could reasonably be anticipated from the intentional act is not an occurrence within the meaning of the policy definition. *Cowan,* 945 S.W.2d at 827–28 (holding that a photo lab clerk, who had made copies of provocative photographs of female customer and showed them to his friends, committed an intentional tort even though he

did not intend for customer to know of his actions).

█ An event is accidental within the meaning of the policy coverage, if it is "an effect that cannot be reasonably anticipated from the use of [the means that produced it], an effect which the actor did not intend to produce and which *he cannot be charged with the design of producing.*" *Id.* at 827 (emphasis added) (quoting, approving, and distinguishing *Republic Nat'l Life Ins. Co. v. Heyward,* 536 S.W.2d 549, 555 (Tex.1976)).

## King's Potential Liability for Intentional Acts

█ Applying this criteria to the case at hand, we conclude that, insofar as concerns the actions of King's employee, Lopez, the plaintiff's complaint describes a willful and vicious assault by one of King's employee on the plaintiff. Although King's characterization of the incident suggests the employee simply reacted in a negligent manner to a business-related confrontation, we find the petition alleges conduct by King's employee that was clearly intentional. Thus, we conclude that, to the extent the Dallas Fire policy provides coverage for the acts of an employee of the insured, there was not a covered "occurrence" within the meaning of the policy. Therefore, Dallas Fire does not have a duty to defend King against any potential liability occasioned by the *intentional* acts of his employee Lopez.

## King's Potential Liability for Negligent Acts

█ King argues, nevertheless, that the plaintiff's allegations of his negligence in hiring, training, and supervising Lopez constitute "occurrences" that are separate and distinct from the allegations of intentional conduct asserted against Lopez. Thus, King contends that, even though his employee Lopez may have committed an intentional tort, Dallas Fire is required to defend him against the plaintiff's allegations of his own negligent conduct.

We do not find a decision that is squarely on point on this issue, but we do find state and federal decisions applying Texas law that have spoken generally on the proposition. In essence, these courts have denied coverage to the insured if the complainant's injury is the result of a negligent act of the principal that is *related to and interdependent on* the intentional conduct of the agent. *See, e.g., Thornhill v. Houston Gen. Lloyds,* 802 S.W.2d 127, 130 (Tex. App.—Fort Worth 1991, no writ) (holding that, where the plaintiff alleged the insured had been negligent in failing to properly train and supervise its employee who served liquor to a minor causing a fatal automobile accident, "the crux" of the plaintiff's allegations were the insured's *intentional* act of selling alcoholic beverages, and the alleged acts of negligence on the part of the insured were not mutually exclusive, but were *related to and interdependent on* the intentional act).

Similarly, in *Centennial Insurance Co. v. Hartford Accident and Indemnity Co.,* the court held that an automobile exclusion in a comprehensive general liability policy applied to an accident in which a third party was killed, even though the employer was negligent in employing the employee driver who caused the accident. 821 S.W.2d 192, 196 (Tex.App.—Houston [14th Dist.] 1991, no writ). The court reasoned that the employer's negligence, by itself, and without the fatal injury caused by the instrumentality of the automobile, could not have resulted in a cause of action against the insured. *Id.* at 194.

Under somewhat different facts, the court in *Duncanville Diagnostic Center, Inc. v. Atlantic Lloyd's Insurance Co. of Texas* held that an insurer had no duty to defend a medical diagnostic center for alleged negligence in hiring, training, and supervising employees who had failed to properly render professional treatment that resulted in the death of a young girl. 875 S.W.2d 788, 792 (Tex.App.—Eastland 1994, writ denied). Upon a rationale simi-

lar to that applied by the court in *Centennial*, the court said:

> The doctrine of concurrent causation does not apply to this case. There would have been no injury in this case and no basis for the [parents'] lawsuits without the negligent rendering of professional medical treatment. Stated more specifically, [the girl's] death could not have resulted from the negligent hiring, training, and supervision or from the negligent failure to institute adequate policies and procedures without the negligent rendering of professional medical services. The negligent acts and omissions were not independent and mutually exclusive; rather, they were related and interdependent. Therefore, the professional services exclusion operated to exclude coverage not only for the claims of negligence in rendering the professional services but also for the related allegations of negligent hiring, training, and supervision and negligent failure to establish adequate policies and procedures.

*Id.* at 791–92. Accordingly, the court held the insurer had no duty to defend. *Id.* at 792.

Federal cases applying Texas law have reached similar conclusions. In *New York Life Insurance Co. v. Travelers Insurance Co.*, an insurer was sued for the negligent hiring, training, and supervision of one of its employees who allegedly had defrauded a client. 92 F.3d 336, 338 (5th Cir.1996). The policy in that case, as in the present case, defined "occurrence" as an "accident, ... which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured.. .*" *Id.* The court found that the employee's fraudulent act (an intentional tort) was not an "occurrence" within the meaning of the policy. *Id.* at 341. Consequently, the court held that the claim was excluded from coverage because it was related to and interdependent on the claim against the agent, i.e. the claim against the principal would not exist except for the claim

against the agent. *Id.* at 340. The court said: "When an agent intends or expects an injury, such intent and knowledge will be imputed to the principal for purposes of determining whether there was an occurrence." *Id.* at 341.

The same federal court issued a similar ruling in *American States Insurance v. Bailey*, deciding that an insurer had no duty to defend a church on claims arising from the sexual misconduct of its pastor. 133 F.3d 363, 371–72 (5th Cir.1998). The court reasoned that the church's alleged liability for negligent hiring, training and supervision was "related to and interdependent" on the intentional sexual misconduct of the pastor, so that the sexual action exclusion in the policy precluded the church's alleged acts from being an "occurrence" covered by the policy. *Id.* at 372.

Other federal circuit courts, applying Texas law, have reached similar conclusions. In *GATX Leasing Corp. v. National Union Fire Insurance Co.*, the Seventh Circuit Court of Appeals determined that the Texas Supreme Court would hold the employer's alleged act of negligence to be interdependent on the claim of intentional misconduct asserted against the employees. 64 F.3d 1112, 1119 (7th Cir.1995). In reaching this conclusion, the federal court relied on *Old Republic Insurance Co. v. Comprehensive Health Care Associates, Inc.*, where an employer and one of its employees were sued by former employees alleging sexual harassment, discrimination, and negligent hiring. 786 F.Supp. 629, 631 (N.D.Tex.1992), *aff'd*, 2 F.3d 105 (5th Cir. 1993). The employer's liability insurer asserted it had no duty to defend because: (1) the harassing employee was not an insured; (2) the employee's intentional acts were not "occurrences"; and (3) there were specific policy exclusions for employment and sexual abuse. *Id.* at 631. The policy defined "occurrence" in a manner similar to the Dallas Fire policy and provided that it included "those damages that are 'neither expected nor intended from the standpoint of the insured.'" *See id.* at

632. The *Old Republic* court held that, under Texas law, because the underlying intentional harassment claim was excluded from policy coverage, the interrelated negligence and slander claims also were excluded. *Id.*

King argues, however, that we should follow an earlier decision of the Fifth Circuit Court of Appeals in *Western Heritage Insurance Co. v. Magic Years Learning Centers and Child Care, Inc.*, which held that negligence claims asserted against the insured employer, even though based on the employee's intentional acts, were "occurrences" within the insured's liability policy. 45 F.3d 85, 88–89 (5th Cir.1995). Contrary to King's argument, we do not find *Magic Years* to be persuasive in the present case. In *Magic Years*, the court's decision was based primarily on a special policy endorsement that controlled the general definition of "occurrence." *Id.* at 88. Moreover, the same court, in *New York Life Insurance Co. v. Travelers Insurance Co.*, 92 F.3d at 340 n. 4, later criticized and declined to follow *Magic Years*, finding that its "alternative holding" regarding the meaning of "occurrence" is inconsistent with the court's earlier holding in *Columbia Mutual Insurance Co. v. Fiesta Mart, Inc.*, 987 F.2d 1124, 1128 (5th Cir.1993). *See also American Guar. & Liab. Ins. Co. v. 1906 Co.*, 129 F.3d 802, 810 (5th Cir.1997) (acknowledging the inconsistencies of prior opinions).

King also cites 17 state and federal cases from other jurisdictions in support of his position. Of this number, we find 11 cases that specifically addressed the issue of occurrence presented here: *Roman Catholic Diocese of Springfield v. Maryland Cas. Co.*, 139 F.3d 561 (7th Cir.1998) (holding, under **Maryland** law, liability insurer had duty to defend Roman Catholic Diocese against allegations of parents that former priest abused their children, the court finding that the plaintiff's alleged injuries were a kind of accidental occurrence); *Silverball Amusement, Inc. v. Utah Home Fire Ins. Co.*, 33 F.3d 1476 (8th Cir.1994) (holding, under **Arkansas** law, an insurer is required to provide coverage and legal defense where complaint alleged employer's acts of negligent hiring and supervision, even though employee committed intentional tort of sexual molestation of a child); *Lutheran Benevolent Ins. Co. v. National Catholic Risk Retention Group, Inc.*, 939 F.Supp. 1506 (N.D.Okla.1995) (holding, under **Oklahoma** law, a church's alleged negligence in retaining a priest after learning the priest had sexually molested a child was an event covered by the church's liability policy that defined the term "occurrence" as an accident);[2] *U.S. Fidelity & Guar. v. Toward*, 734 F.Supp. 465 (S.D.Fla.1990) (holding, under **Florida** law, insurer had duty to defend against allegations of negligent hiring and/or supervision of teachers who allegedly molested their students because alleged negligence was an "occurrence" within the policy definition); *Western World Ins. Co. v. Hartford Mut. Ins. Co.*, 600 F.Supp. 313 (D.Md.1984) (holding, under **Maryland** law, police officer's intentional shooting of fleeing suspect was an "occurrence" within meaning of liability policy and city, state, and police chief were entitled to defense against claims of negligent hiring and supervision); *Engsberg v. Town of Milford*, 597 F.Supp. 251, 256 (W.D.Wis.1984) (holding, under **Wisconsin** law, that a constable's intentional act of shooting the plaintiff's dogs was an "occurrence" obligating the insurer to defend the city); *Hanover Ins. Co. v. Crocker*, 688 A.2d 928 (Me.1997) (holding, under **Maine** law, insurer had duty to defend a mother against allegations she had negligently failed to prevent husband's sexual abuse of

---

**2.** The court reasoned that the church had not intended or expected to cause injury to the child or anyone else when it retained the priest, and its knowledge of the priest's misconduct, without more, was not enough to transform the retention into gross or willful negligence. *Lutheran Benevolent Ins. Co. v. National Catholic Risk Retention Group, Inc.*, 939 F.Supp. 1506, 1510 (N.D.Okla.1995).

their daughter); *Property Cas. Co. of MCA v. Conway*, 147 N.J. 322, 687 A.2d 729 (1997) (holding **New Jersey** homeowner's policy was ambiguous regarding parent's vicarious liability for child's acts of school vandalism and the words "accident" and "occurrence" were to be construed in favor of the insured); *Edwards v. Akion*, 52 N.C.App. 688, 279 S.E.2d 894 (1981) (holding, under **North Carolina** law, intentional torts committed by a city employee while acting within the scope of his duties were "occurrences" within meaning of the church's liability policy because the city did not expect or intend that its employee would assault a third party); *Albertson's Inc. v. Great Southwest Fire Ins. Co.*, 83 Or.App. 527, 732 P.2d 916, 918 (1987) (holding, under **Oregon** law, insurer had duty to defend a retail store against customer's allegations of tortious conduct because such conduct, when viewed from the standpoint of the insured employer, could reasonably fall within the definition of "accident" and "occurrence" for purposes of policy coverage); *Unigard Mut. Ins. Co. v. Argonaut Ins. Co.*, 20 Wash. App. 261, 579 P.2d 1015, 1018 (1978) (holding, under **Washington** law, insurer was obligated to provide coverage to parents of boy who intentionally damaged school property, because the intentional act exclusion applied only to the boy and not to the parents who had not engaged in any excluded conduct).

Dallas Fire, in response to King's argument, cites a number of cases from other jurisdictions holding that an intentional tortious act does *not* constitute an "occurrence" within the meaning of the policy definition. *See, e.g., American Guar. and Liab. Ins. Co. v. 1906 Co.*, 129 F.3d 802, 810 (5th Cir.1997) (holding, under **Mississippi** law, an employer is not covered for claims of negligent hiring or supervision where underlying tortious conduct is intentional and when the claims against the employer are "related to and interdependent" on the employee's intentional con-

duct because the ultimate question is whether the employee's intentional misconduct constitutes an "occurrence"); *Farmers Alliance Mut. Ins. Co. v. Salazar*, 77 F.3d 1291, 1296–97 (10th Cir.1996) (holding, under **Oklahoma** law, whether event was an "occurrence" must be determined by the injury and its immediate causative circumstances, and a claim against a mother for negligent supervision was not an "occurrence" because son's act of murder was not an accident); *Britamco Underwriters, Inc. v. Stokes*, 881 F.Supp. 196, 200 (E.D.Pa.1995) (holding, under **Pennsylvania** law, a bouncer's intentional tort was not an accident so there was no occurrence); *American Empire Surplus Lines Ins. Co. v. Bay Area Cab Lease, Inc.*, 756 F.Supp. 1287, 1291 (N.D.Cal.1991) (holding, under **California** law, negligent hiring and supervision was not an accident and damages arising from assault were specifically excluded from policy coverage); *Public Serv. Mut. Ins. Co. v. Camp Raleigh, Inc.*, 233 A.D.2d 273, 650 N.Y.S.2d 136 (1996) (holding, under **New York** law, claims of employer's negligence for failure to properly train and supervise employee did not alter the intentional nature of the employee's operative acts (sexual assaults)); *Erie Ins. Co. v. American Painting Co.*, 678 N.E.2d 844, 846 (Ind.App. 1997) (holding, under **Indiana** law, claims against employer for negligent hiring and retention of employee who burglarized customer's home, even if careless and negligent, did not involve an accidental "occurrence" within meaning of policy); *see also GATX Leasing Corp.*, 64 F.3d at 1116 (holding that, where the liability policy defined "occurrence" as an accident that was "neither expected nor intended from the standpoint of the insured," the property loss occasioned by the employees' intentional theft was not the result of an "occurrence" within the meaning of the policy, even though the insured supervised the employees in a negligent manner and thereby permitted the theft); [3] *Bankers*

---

3. In essence, the court concluded that negligence attributed to the insured could not be

*Multiple Line Ins. Co., Inc. v. Pierce,* 20 F.Supp.2d 1004, 1007 (S.D.Miss.1998) (holding, under **Mississippi** law, claims against employer for negligent supervision of employee who had engaged in excluded conduct were "related and interdependent" on the employee's wrongful conduct).

We conclude that, unless the Separation of Insured's provision compels a different interpretation, the plaintiff's claims against King for negligent hiring, training, and supervision do not allege an "occurrence" within the Dallas Fire policy definition because those claims are related to and interdependent on the claim of intentional tort asserted against King's employee. *See Duncanville Diagnostic Ctr.,* 875 S.W.2d at 792; *Centennial Ins. Co.,* 821 S.W.2d at 196; *New York Life,* 92 F.3d at 341. Thus, while we find some merit in the rationale of the cases cited by King, we hold that Dallas Fire has no duty to defend King against the underlying allegations unless the Separation of Insureds provision requires a different result.

### "Separation of Insureds"

■ The "Separation of Insureds" clause in the Dallas Fire policy states, "Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies: (a) As if each Named Insured were the only Named Insured; and (b) Separately to each insured against whom claim is made or 'suit' is brought."

King asserts that this special provision, which expressly states the policy is to be applied *separately* as to "each insured against whom a claim is made," precludes our application of the general rule that the negligence claims asserted against King should be considered as "related to and interdependent on" the claim asserted against Lopez. He argues that we should consider the negligence claims asserted against him separately from the intentional

separated from the intentional acts of the employees. *GATX Leasing Corp. v. National*

assault claim asserted against Lopez and, looking at the negligence claims solely from King's standpoint, require Dallas Fire to defend him against the allegations in the plaintiff's complaint.

We note that one of King's cited cases, *Silverball Amusement, Inc. v. Utah Home Fire Ins. Co.,* involved a Separation of Insureds clause that is virtually identical to the Dallas Fire provision. *See* 842 F.Supp. 1151, 1155 (W.D.Ark.1994), *aff'd,* 33 F.3d 1476 (8th Cir.1994). In *Silverball,* the federal court, applying **Arkansas** law, held that, because of the Separation of Insureds provision, the negligent hiring and supervision claims asserted against the insured employer should be considered separately from the tort claims (intentional molesting of a child) asserted against the employee. *Id.* at 1155. Looking solely at the alleged negligent acts of the employer, separate and apart from the intentional acts of the employee, the *Silverball* court determined that, at the time the employee was hired, the employer could not have intended or expected he later would become a child molester. *Id.* at 1165. Thus, the court ruled the negligence claims asserted against the employer were outside the policy's intentional acts exclusion and that the insurer had a duty to defend against them. *Id.*

We find considerable merit in the rationale of the *Silverball* decision; however, the Fifth Circuit Court of Appeals rejected this line of reasoning in *American Guarantee and Liability Insurance Co. v. 1906 Co.,* 129 F.3d 802, 810 (5th Cir.1997), and it appears contrary to the pronouncements issued by the Texas Supreme Court in other insurance cases.

### The *American Guarantee* Plurality

The *American Guarantee* case involved a Separation of Insureds provision that is virtually identical to the provision in the Dallas Fire policy. 129 F.3d at 810. A

*Union Fire Ins. Co.,* 64 F.3d 1112, 1119 (7th Cir.1995).

majority of the appellate court panel, applying Mississippi law, held that, despite the language of this provision, the insurer had no duty to defend the insured employer against the plaintiff's claims of negligent hiring, training, and entrustment, concluding that such claims were "related to and interdependent" on the intentional tort claim asserted against the employee. *Id.* The "ultimate question," said the majority, was whether the employee's intentional misconduct itself fell within the definition of "occurrence" in the liability policy, and that this issue turned largely on principles of agency and imputed intent. *Id.* The court reasoned that while the Separation of Insureds provision presented a "close question," Mississippi courts "would likely follow the lead of 'neighboring jurisdictions' and hold that the negligence claims against the employer were related to and interdependent on the claims against the employee for intentional misconduct." *Id.* Therefore, said the court, the answer to the "ultimate question" is whether the employee's intentional misconduct *itself* is an "occurrence" within the policy definition. *Id.*

The court's majority opinion in *American Guarantee* acknowledged that this issue had caused the Fifth Circuit courts "some difficulty," and that its holding was partially at odds with its earlier decision in*Western Heritage Insurance v. Magic Years Learning Centers and Child Care, Inc.*, 45 F.3d 85 (5th Cir.1995), which had considered a very similar separability clause. *American Guarantee*, 129 F.3d at 810. The majority explained, however, that in *New York Life Insurance Co. v. Travelers Insurance Co.*, 92 F.3d 336, 340–41 (5th Cir.1996), it had declined to follow *Magic Years* because its decision relating to the intentional acts exclusion was an "alternative holding," and also because the *Magic Years* decision "failed to acknowledge and is inconsistent with" the court's earlier holding in *Columbia Mutual Insurance Co. v. Fiesta Mart, Inc.*, 987 F.2d 1124 (5th Cir.1993). *American Guarantee*, 129 F.3d at 810. Referring to the *Fiesta*

*Mart* decision as binding precedent, the *American Guarantee*majority, quoting from that holding, said that "when an agent intends or expects an injury, such intent and knowledge will be imputed to the principal for purposes of determining whether there is an occurrence." 129 F.3d at 810.

### The *American Guarantee* Dissent

The dissenting opinion in *American Guarantee*, written by Circuit Judge Parker, squarely addressed and disagreed with the majority's holding regarding the Separation of Insureds provision. 129 F.3d at 813 (J. Parker, concurring and dissenting). Noting that the Mississippi Supreme Court had given no indication it would be inclined to follow the line of cases upon which the majority relied, Judge Parker explained that the "keystone" of the occurrence definition under Mississippi law was whether the event was "neither expected nor intended from the standpoint of the insured." *Id.* Judge Parker further suggested that the rationale set forth in *Silverball* represented the proper approach, observing that the Separation of Insured's provision in *Silverball* was virtually identical to the one in the Mississippi policy. *Id.*

### Rationale of *American Guarantee*

As the *American Guarantee*majority acknowledged, the decisions have not given consistent treatment to "separation of insureds" clauses, particularly where the claims against one insured have been closely related to claims asserted against another insured. *Id.* at 809–10; *see also* 7A JOHN ALAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4492.01, at 20 (Berdal ed.1979) (stating courts have not adequately recognized implications of severability clauses, which were added to standard liability policies in 1955, and that a severability clause should clearly entitle an employer-master to a defense "so long as the employer did not direct the act or other-

wise condone it through negligent or indifferent hiring").

The *American Guarantee* majority, and other federal decisions adopting a similar line of reasoning, have focused on the nature of the agent's act, rather than on the allegations asserted against the employer. Thus, under the rationale of these decisions, an insurer has no duty to defend an insured employer against allegations of negligent acts that are related to and interdependent on an employee's intentional act that does not *itself* fall within the policy definition of an occurrence. *See American Guarantee*, 129 F.3d at 810; *New York Life, Ins.*, 92 F.3d at 339; *Fiesta Mart*, 987 F.2d at 1128. These decisions seem to suggest that the employee's intent will be imputed to the employer, notwithstanding the separability clause, if the employer is charged with the design, e.g. negligent hiring, training, or supervision, that produced the employee's intentional tort. *See* APPLEMAN at 20; *see also Cowan*, 945 S.W.2d at 827 (emphasizing, by citing *Heyward*, 536 S.W.2d at 555, that an event will be considered "accidental" only if the insured "cannot be charged with the design of producing it").

The dissenting opinion suggests that, because the summary judgment record reflects a genuine issue of material fact regarding whether the plaintiff's injury was "unexpected or unanticipated," from King's standpoint, we should hold that the trial court erred in rendering a summary judgment in favor of Dallas Fire. The dissent points out that this Court recently construed a severability clause containing language similar to that in the Dallas Fire policy and held that the clause meant each insured against whom a claim is brought should be treated as if that insured was the only insured under the policy. *Admiral Ins. Co. v. Trident NGL, Inc.*, 988 S.W.2d 451, 455–56 (Tex.App.—Houston [1st Dist.] 1999, pet. denied). In essence, the dissent suggests that the separability clause requires us to look at the occurrence from the standpoint of the insured employer, and not from the standpoint of the employee-tortfeasor.

We do not believe this Court's holding in *Admiral* stands as a precedent for this case. In *Admiral*, the Court was faced with a very different factual situation, one which did not raise the troublesome issue presented here. In *Admiral*, there was no question about whether, in the face of a separability clause, an employee's intentional tort should be imputed to the employer-insured. Thus, the Court's decision in that case did not turn on whether the plaintiff's allegations charged the employer with creating the circumstances that produced the employee's intentional tort.

Here, the plaintiff's allegations charge King with negligence in hiring, training, and supervising Lopez and, in effect, charge King with creating the circumstances that produced Lopez's intentional tort. Under these allegations, we believe we are required, notwithstanding the separability clause, to impute Lopez's intentional act to King. *See Heyward*, 536 S.W.2d at 549 (holding in essence that an event is accidental only if the insured is not charged with the circumstances that produced it).

We acknowledge the sound logic of the dissenting opinion. Indeed, we might follow the path suggested by the dissent if we did not feel constrained to adopt the rationale of the majority in *American Guarantee*. We do not write on a clean slate, however, and we therefore conclude there was no "occurrence" within the meaning of the Dallas Fire policy definition and that Dallas Fire had no duty to defend King against the claims asserted against.

The plaintiff's allegations against King are related to and interdependent on the allegations of Lopez's intentional misconduct, and in effect charge King with creating the circumstances that produced Lopez's intentional act. Because Lopez obviously intended to injure the plaintiff, his intentional misconduct must be imputed to King, notwithstanding the language

of the separability clause. Accordingly, we hold there was no "occurrence" within the meaning of the Dallas Fire policy definition, and that Dallas Fire has no duty to defend King against the claims asserted against him.

### Intentional Act Exclusion

Because of the foregoing holding, we need only briefly address King's argument regarding the applicability of the intentional act exclusion.

King argues, in essence, that Dallas Fire has a duty to defend, despite the intentional acts provision, because he did not participate in Lopez's misconduct. In support of this argument, King cites *Walker v. Lumbermens Mutual Casualty Co.*, 491 S.W.2d 696 (Tex.Civ.App.—Eastland 1973, no writ). In *Walker*, the appellate court held that, notwithstanding an intentional acts exclusion, the insured was entitled to liability protection against a claim asserted against him based on his 11-year-old son's intentional act of property damage. *Id.* at 699. King also cites *State Farm General Insurance Co. v. White*, in which the court held that an intentional injury exclusion in a homeowner's personal liability policy did not preclude coverage to an insured whose employees allegedly observed but failed to report incidents of child abuse by the husband of one of the day-care staff workers. 955 S.W.2d 474, 477-78 (Tex.App.—Austin 1997, no pet.)

We do not find either of these cases to be persuasive. Neither case dealt with the specific issue involved here, i.e., whether the intentional acts exclusion precludes coverage to an employer for intentional acts committed by an employee.

King also relies on cases involving an innocent co-insured's contractual right to receive insurance benefits. We do not find these cases to be persuasive because they dealt solely with the rights of co-insureds. *See Texas Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 881 (Tex.1999) (noting that Texas's longstanding public policy against allowing insured to benefit from fraud does not prevent innocent spouse from recovering her share of policy benefits); *Kulubis v. Texas Farm Bureau Underwriters Ins. Co.*, 706 S.W.2d 953, 955 (Tex.1986) (to similar effect); *Travelers Cos. v. Wolfe*, 838 S.W.2d 708, 712 (Tex.App.—Amarillo 1992, no writ) (co-insured's illegal destruction of community property not a bar to innocent spouse's receiving insurance benefits).

Because of our determination that the plaintiff's allegations do not demonstrate an "occurrence" within the policy coverage, we do not decide whether the intentional injury exclusion also bars King's recovery. We observe, however, that the intentional injury exclusion applies only when the injury or property damage is "expected or intended from the standpoint of the insured." Because the petition does not suggest that King either expected or intended injury to result from his employee's misconduct, we cannot perceive how, under the language of the intentional act exclusion, he could be deemed to have expected or intended the injury caused by his employee. *See Cowan*, 945 S.W.2d at 828.

In summary, we conclude that Lopez's assault on the plaintiff was not an "accident" within the meaning of the Dallas Fire policy's definition of "occurrence," and, because the claims asserted against King for negligent hiring, training, and supervising Lopez are inextricably related to and interdependent on Lopez's intentional tort, the intentional nature of Lopez's act must be imputed to King. Accordingly, we hold that Dallas Fire has no duty to defend King against the claims asserted against him in the underlying action.

We affirm the trial court's summary judgment.

Justice MIRABAL, dissenting.

MARGARET GARNER MIRABAL, Justice, dissenting.

The key to this case is the "Separation of Insureds" provision in the insurance

policy. I agree with the majority that "Dallas Fire has no duty to defend King against the underlying allegations *unless* the Separation of Insureds provision requires a different result." (Emphasis added.) I disagree with the majority's conclusion that the Separation of Insureds provision does *not* require a different result. Accordingly, I respectfully dissent.

## The Facts

The insurance policy involved is a "Commercial General Liability Policy" obtained by a construction company to insure it against claims of liability arising out of its construction activities. It is undisputed that the claims involved in this case arose out of the activities of an employee of the construction company at a construction site. When the plaintiff sued the construction company, the company naturally looked to its commercial general liability insurer to defend against the claim that had arisen out of activities at its construction site.

## The Insurance Policy

It is uncontested that the insurance company has a duty to defend the construction company if the plaintiff's bodily injury was caused by an "occurrence," and if the construction company is not excluded from coverage under one of the policy exclusions. The policy defines "occurrence" as an "accident." An event is an "accident" if it was unexpected or unanticipated from the standpoint of the insured. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 827 (Tex.1997).

I agree with the majority that as to the employee, who was an additional named insured, and who intentionally assaulted the plaintiff, there was no "occurrence" as defined in the policy because there was no "accident" involved from the standpoint of

the employee. However, the construction company was a separate named insured, and there is summary judgment evidence that it did not intend or anticipate the assault on the plaintiff.

According to the "Separation of Insureds" provision in the policy, the insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or suit is brought.

This provision is similar to the "severability of interest clause" we construed in *Admiral Ins. Co. v. Trident NGL, Inc.*, 988 S.W.2d 451, 455–56 (Tex.App.—Houston [1st Dist.] 1999, pet denied).[1] When a policy has such a clause, each insured against whom a claim is brought is treated as if he or she were the only insured under the policy. *Commercial Standard Ins. Co. v. American Gen. Ins. Co.*, 455 S.W.2d 714, 721 (Tex.1970); *Admiral*, 988 S.W.2d at 455–56.

Treating the construction company in the present case as the only insured under the policy, a fact issue was raised as to whether the insurance company has a duty to defend the construction company. I reach this conclusion because there was evidence that the injury to plaintiff was caused by an event that was unexpected or unanticipated from the standpoint of the construction company. Accordingly, in my opinion, the trial court erred in entering summary judgment against King, the construction company.

---

1. The "severability of interest clause" provided:

   "Insured" means any person or organization qualifying as an Insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability.